SPRAYING SYSTEMS COMPANY, Plaintiff–Appellant,

v.

DELAVAN, INCORPORATED, Defendant–Appellee.

No. 91–1919.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 9, 1992.
Decided Sept. 17, 1992.

Dennis R. Schlemmer (argued), Lawrence S. Wick, Mary C. Merz, Leydig, Voit & Mayer, Chicago, Ill., for plaintiff-appellant.

Daniel M. Riess (argued), Daniel R. Pastirik, Lockwood, Alex, Fitzgibbon & Cummings, Chicago, Ill., for defendant-appellee.

Before CUDAHY and KANNE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

CUDAHY, Circuit Judge.

Spraying Systems Company sued Delavan, Incorporated for trademark and trade dress infringement and unfair competition under the Lanham Act and for cancellation of Delavan's two federal trademark registrations. The Trademark Trial and Appeal Board granted summary judgment in favor of Delavan, finding no genuine issue of confusing similarity between Delavan's COLOR JET mark and Spraying Systems' several marks, which include TEEJET, AIRJET, FOAMJET, CONEJET and QUICKJET. The district court, after considering additional evidence, also granted summary judgment in favor of Delavan. We affirm.

I.

Both parties manufacture and sell spray nozzles and related equipment for use in industrial and agricultural markets. Since 1938, Spraying Systems has held and used a number of valid federal trademarks containing the suffix "–JET." It now owns

more than 35 such trademark registrations, most of which are incontestable.[1] Many of Spraying Systems' customers know the company by the name "TEEJET," a trademark first used in 1948. Spraying Systems' annual sales of goods marketed under the "–JET" suffix names have exceeded $20 million since 1981 and $30 million since 1986.

Delavan owns two trademark registrations for the mark COLOR JET,[2] used in connection with spray nozzles designed primarily for agricultural applications. Delavan concedes that its goods are similar to those of Spraying Systems and that the goods share essentially the same channels of trade and purchasers. It is undisputed, however, that Delavan and Spraying Systems use significantly different packaging in the marketing of their goods. Delavan's packaging is red, white and blue, while Spraying Systems' is yellow with black labeling. In addition, each company clearly marks the source of the product with the trademark "Delavan" or "Spraying Systems" on the packaging.

Spraying Systems and Delavan both color-code their spray nozzles to designate specific nozzle capacities and flow rates. Delavan's color-coding system, which came into use in 1982, is registered under the trademark COLOR–BRATE. Spraying Systems began using its system, which it promotes under the trademark VISIFLO, in 1983. Although Delavan's COLOR–BRATE system and Spraying Systems' VISIFLO system use many of the same colors, the colors do not correspond to the same nozzle capacities.

On January 26, 1988, Spraying Systems petitioned the Trademark Trial and Appeal Board of the United States Patent and Trademark Office (TTAB or Board) to cancel Delavan's two COLOR JET registra-

tions. Spraying Systems argued that the COLOR JET mark so resembled its own "–JET" suffix marks as to be likely to cause confusion, mistake or deception. The TTAB, finding no genuine issue of material fact as to the likelihood of confusion, granted summary judgment for Delavan. The Board noted that the sole similarity in the marks was the "JET" formative, which it found to be descriptive. It also relied on evidence of numerous third-party registrations and uses of marks containing the "JET" formative for spray nozzles and related goods.

Pursuant to § 21(b) of the Lanham Act, 15 U.S.C. § 1071(b), Spraying Systems sought review of the TTAB's decision in the district court. (A party may appeal an adverse decision of the Board either to the U.S. Court of Appeals for the Federal Circuit or to a federal district court. An appeal to a district court is in part an appeal and in part a new action, since additional relief may be requested and additional evidence may be presented. *See* 2 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 21:5, at 14–15 (2d ed. 1984).) In the district court, Spraying Systems again pursued its claim of infringement of its "–JET" trademarks and, in addition, sought protection of its color-coding scheme as a trademark and its overall product image as trade dress. The district court applied a "thorough conviction" standard to the TTAB's decision on infringement of Spraying Systems' "–JET" trademarks, concluding that summary judgment for Delavan was proper. As to the infringement claim premised on Spraying Systems' color-coding scheme and the trade dress claim, the court found no genuine issue of material fact and entered summary judgment against Spraying Systems.

---

1. Spraying Systems' incontestable "–JET" suffix marks are: AIRJET, AUTOJET, BOOMJET, CASTERJET, CONEJET, DEFLECTOJET, DESCALEJET, DIRECTOJET, DISCJET, DISTRIBOJET, DOCJET, FIELDJET, FLATJET, FLOODJET, FOAMJET, FOGJET, FULLJET, GUNJET, HOLLOWJET, INSECTOJET, LP TEEJET, MULTEEJET, ORBIJET, QUICKJET, QUICK TEEJET, SHORT JET, SNOWJET, STREAMJET, TEEJET, UNIJET, VEEJET, WASHJET and WHIRLJET. Its marks that are not incontestable are: METERJET, SPIRALJET, TWINJET, TRIGGERJET and XR TEEJET.

2. Those trademark registrations are No. 1,351,-698 for nonmetal spray nozzles (issued July 30, 1985), and No. 1,454,865 for metal spray nozzles (issued September 10, 1987).

*Spraying Systems Co. v. Delavan, Inc.,* 762 F.Supp. 772 (N.D.Ill.1991).

Spraying Systems appeals, challenging several aspects of the district court's decision.[3]

## II.

We must begin by addressing the standard of review, an issue that has generated some confusion in this case. The review mechanisms of 15 U.S.C. § 1071 are unique. Review of a TTAB decision in a federal district court is considered *de novo* because the parties are permitted to present new evidence and even enlarge the pleadings. *See Teter, Inc. v. Rheem Mfg. Co.,* 334 F.2d 784, 786 (7th Cir.1964); *Standard Pressed Steel Co. v. Midwest Chrome Process Co.,* 418 F.Supp. 485, 489 (N.D.Ill. 1976). That characterization can be misleading, however, because deference is owed to the findings of the TTAB. In particular, this Court has declared that the Board's decision "must be accepted as controlling upon a finding of fact about confusing similarity of trademarks, unless the contrary is established by testimony which in character and amount carries thorough conviction." *Fleetwood Co. v. Hazel Bishop, Inc.,* 352 F.2d 841, 844 (7th Cir.1965) (citing *Morgan v. Daniels,* 153 U.S. 120, 125, 14 S.Ct. 772, 773–74, 38 L.Ed. 657 (1894)).

Contrary to Spraying Systems' assertion, the "vast majority of courts" apply the thorough conviction standard to such findings made by the Patent and Trademark Office. 2 McCarthy § 21:5, at 17. Spraying Systems argues that the thorough conviction standard should not apply to new evidence presented in the district court. It is true that new evidence must itself be considered *de novo* by the district court—in the sense of being fairly weighed without placing a thumb on the scales or dismissing it out of hand. But the evidence must then be weighed against the Board's *findings* under the thorough conviction standard. Unless the new evidence leads to a thorough conviction that a finding of the Board is incorrect, that finding is controlling. *Velsicol Chemical Corp. v. Monsanto Co.,* 579 F.2d 1038, 1042 (7th Cir. 1978); *Watkins Prods., Inc. v. Sunway Fruit Prods., Inc.,* 311 F.2d 496, 498–99 (7th Cir.1962), *cert. denied,* 373 U.S. 904, 83 S.Ct. 1291, 10 L.Ed.2d 199 (1963); *Yale Elec. Corp. v. Robertson,* 26 F.2d 972, 973 (2d Cir.1928) (L. Hand, J.); 2 McCarthy § 21:5, at 17.

Finally, Spraying Systems argues that it is illogical for the district court's review of the TTAB's grant of summary judgment to be under the thorough conviction standard, while this court's review of the district court's summary judgment is *de novo.* Here Spraying Systems is on to something (although it does not seem to be sure of what, for it fails to explain what is illogical about this state of affairs). The problem is this: the thorough conviction standard applies to *findings* of the TTAB; a grant of summary judgment, however, does not yield any factual findings, but only a conclusion that there are no genuine issues of material fact. But perhaps such a conclusion of the Board is entitled to the same deference as a true finding of fact. After all, the thorough conviction standard is premised on the expertise of the Patent and Trademark Office, and that expertise may be employed for a conclusion that there are no issues of material fact just as it is for a factual finding.

However, although it is a difficult question, we conclude that the thorough conviction standard cannot apply to the TTAB's grant of summary judgment. The thorough conviction standard applies to "find-ing[s] of fact about confusing similarity of trademarks," and there are no such findings on summary judgment. It is helpful to consider by analogy this court's review of district court decisions. We review findings of fact under the clearly erroneous standard and conclusions of law *de novo.* A grant of summary judgment is reviewed *de novo* on the theory that a "finding" of

3. In light of this Court's decision in *NutraSweet Co. v. Stadt Corp.,* 917 F.2d 1024 (7th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1640, 113 L.Ed.2d 735 (1991), Spraying Systems no longer pursues its infringement claim based on its color-coding scheme.

no genuine issue of material fact is not a true finding of fact, but more like a legal conclusion. Moreover, the TTAB follows the same procedure and standards for summary judgment as the federal courts. *See* David J. Kera, *Tips from the TTAB: Summary Judgment*, 71 Trademark Rep. 59 (1981). We have found no cases that address this point, although some cases in the Federal Circuit have reviewed grants of summary judgment by the TTAB under what appears to be a *de novo* standard. *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1567–68 (Fed.Cir.1987); *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 627–28 (Fed.Cir.1984).

■ Because the TTAB granted summary judgment, the district court should have applied a *de novo* standard instead of a thorough conviction standard. But the district court's error does not require reversal. Our review of the district court's grant of summary judgment is *de novo* in any event, and any undue deference given to the TTAB below becomes moot at this point. We are obliged to draw reasonable inferences in favor of the nonmoving party, and will affirm the entry of summary judgment only if there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Allensworth v. General Motors Corp.*, 945 F.2d 174, 178 (7th Cir. 1991).

### III.

■ We now proceed to the merits. The dispute centers around whether Delavan's COLOR JET mark infringes Spraying Systems' "-JET" marks applied to similar spray nozzle products. The key to a showing of trademark infringement, trade dress infringement or unfair competition is a likelihood of confusion, deception or mistake. *James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 274 n. 16 (7th Cir.1976); 1 McCarthy § 2:3, at 54. However, "a court doesn't even reach the question of likelihood of confusion until persuaded that the putative mark is sufficiently distinctive to warrant prima facie protection as a trademark." *Blau Plumbing, Inc. v.*

*S.O.S. Fix–It, Inc.*, 781 F.2d 604, 610 (7th Cir.1986). In this regard the mark should initially be classified as generic, descriptive, suggestive or arbitrary. We have explained this classification scheme as follows:

> [I]t is no purpose of trademark protection to allow a firm to prevent its competitors from informing consumers about the attributes of the competitors' brands. That is why trademarks that are fanciful (i.e., made up, like "Kodak" or "Exxon"), or arbitrary (e.g., "Black & White" scotch), or suggestive (e.g., "Business Week," "Coppertone") are favored, why generic words (names of products rather than brands—"airplane," for example, or "decaffeinated coffee") may not be trademarked at all, and why descriptive words (e.g., "bubbly" champagne) may be trademarked only if they have acquired secondary meaning, that is, only if most consumers have come to think of the word not as descriptive at all but as the name of the product ("Holiday Inn," for example).... To allow a firm to use as a trademark a generic word, or a descriptive word still understood by the consuming public to describe, would make it difficult for competitors to market their own brands of the same product.

*Id.* at 609. The district court, although it agreed with the Board that the "JET" formative was descriptive, did not reach the likelihood of confusion issue. Instead, it held that Spraying Systems had not established secondary meaning in the "JET" term.

### A.

■ On the issue of descriptiveness, Spraying Systems does not seriously challenge the rulings of the Board and the district court. We are also convinced that there is no genuine issue as to the "JET" term's being descriptive. As the Board explained:

> [T]here exists no genuine issue of fact that the use of that particular word in all of these marks was intended to convey its dictionary meaning, i.e., "1. A high-

velocity fluid stream forced under pressure out of a small-diameter opening or nozzle. 2. Something emitted in or as if in such a stream ... 3. An outlet, such as a spout or nozzle, for emitting such a stream." (*The American Heritage Dictionary* (1976)).

TTAB Op. at 12. In determining that the term is descriptive, the Board and the district court also considered third-party registrations and uses of the "JET" formative. The record contains evidence of more than 50 such registrations and even more uses of the term in trade literature, for products such as AGRI–JET, DYNAJET, RAIN JET, CERJET, SPIN JET, CENTER JET, TAN–JET and FLO–JET. Spraying Systems argues that many of the third-party products are not directly related to the parties' products. Many of them, however, are used in connection with nozzles and spraying equipment, and they are sufficiently related to demonstrate the widespread use of the term "JET" in its dictionary sense. *See, e.g., Tektronix, Inc. v. Daktronics, Inc.*, 534 F.2d 915, 917 (CCPA 1976). Spraying Systems has also attempted to show that many of the registered trademarks are not in current use. However, several of the products are in current use, and those that are not can still be probative on the issue of descriptiveness. *See, e.g., In re Dayco Prods.–Eaglemotive Inc.*, 9 U.S.P.Q.2d 1910, 1911 (TTAB 1988).

### B.

■ We turn next to the issue of secondary meaning. Secondary meaning is "a mental association in buyers' minds between the alleged mark and a single source of the product." 1 McCarthy § 15:2, at 659. It can be established through direct consumer testimony, consumer surveys, length and manner of use, amount and manner of advertising, volume of sales, place in the market and proof of intentional copying. *Echo Travel, Inc. v. Travel Associates, Inc.*, 870 F.2d 1264, 1267 (7th Cir. 1989); *Union Carbide Corp. v. Ever-Ready Inc.*, 531 F.2d 366, 380 (7th Cir.), *cert. denied*, 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976).

■ Spraying Systems first contends that the Board and the district court failed to give adequate consideration to its evidence of sales, advertising and use of its "–JET" marks. We do not think that this evidence is sufficient to create a genuine issue of material fact, for three reasons. First, this evidence may show extensive recognition of Spraying Systems' individual composite marks, but it fails to show secondary meaning in the "JET" formative itself. Spraying Systems asks us to assume what it needs to prove: that "JET"— used as a suffix—indicates a single source to the relevant consuming public. *See Walt–West Enterprises, Inc. v. Gannett Co.*, 695 F.2d 1050, 1060 (7th Cir.1982). Second, Delavan's evidence of third-party use of the "JET" formative casts further doubt on Spraying Systems' assertion of secondary meaning. While it is true that the probative value of this evidence is somewhat diminished by Spraying Systems' contrary evidence of lack of use and the only distant relatedness of several third-party products, there is enough relevant third-party use that the point retains its vitality. Finally, this evidence of sales, advertising and use is entirely circumstantial, and courts have noted that this type of evidence alone is often insufficient to establish secondary meaning. *See* 1 McCarthy § 15:16, at 696–97 & n. 18 (citing *Union Carbide*, 531 F.2d at 380). As Judge Augustus Hand explained (perhaps overstating the matter somewhat):

It, therefore, makes no difference what efforts or money the DuPont Company expended in order to persuade the public that "cellophane" means an article of DuPont manufacture. So far as it did not succeed in actually converting the world to its gospel it can have no relief.

*DuPont Cellophane Co. v. Waxed Prods. Co.*, 85 F.2d 75, 81 (2d Cir.), *cert. denied*, 299 U.S. 601, 57 S.Ct. 194, 81 L.Ed. 443 (1936), 304 U.S. 575, 58 S.Ct. 1047, 82 L.Ed. 1539 (1938), *quoted in* 1 McCarthy § 15:16, at 697.

■ Next, Spraying Systems argues that its consumer survey evidence was improperly rejected by the district court.

Spraying Systems offered three consumer surveys as evidence in the district court, only one of which, the "Suffix Study," is relevant to the issue of secondary meaning in the "JET" formative. In this telephone survey, respondents were read the names of six "JET" trademarks in full and asked whether they associated the six names with one company or more than one company. Five of the six names were Spraying Systems' agricultural "–JET" marks: TEE-JET, XR TEEJET, TWINJET, FULLJET and CONEJET. The other name was Delavan's COLOR JET. Thirty-eight percent of the respondents associated the six names with one company, while 50 percent associated them with more than one company.

Although this matter presents the closest question in the case, we agree with the district judge that this survey was flawed and does not create a genuine issue of material fact. First, the question failed to capture secondary meaning in the "–JET" suffix in an unbiased manner. The list of five of Spraying Systems' trademarks— two of which included its popular name, "Teejet"—created a bias in favor of identifying a single company without tying the association to the crucial "–JET" suffix. Spraying Systems had to show secondary meaning in *the "–JET" suffix*, and for this purpose we must agree with the district judge that some fairer means of isolating the suffix was required.[4] Second, the bias was compounded by the fact that the questioner introduced the list of marks with the words "some of the names [of agricultural spray nozzles] you might have seen or heard are...." Third, the fact that the survey was conducted by telephone further diminishes its value. While telephone surveys are not inherently defective (although they have been criticized by some courts, *see* 2 McCarthy § 32:48, at 771 & n. 13), the absence of any visual presentation was significant here, particularly given the space before the word "JET" in COLOR JET. Delavan's use of "JET" as a separate word rather than a suffix makes its use of the term even more clearly descriptive and nondistinctive, and a telephone survey, of course, failed to capture this feature. Finally, the district court noted that the 38–percent response figure (representing those associating the six names with a single company) would be marginal to prove secondary meaning even in a properly designed survey. Spraying Systems responds by citing *Monsieur Henri Wines Ltd. v. Duran*, 204 U.S.P.Q. 601, 605 (TTAB 1979), in which a 37–percent figure was found probative of secondary meaning. The district court's point remains valid. While a 50–percent figure is regarded as clearly sufficient to establish secondary meaning, a figure in the thirties can only be considered marginal. *See* 2 McCarthy § 32:54, at 786. Given the serious problems with the survey, and also given that 50 percent of the respondents associated the names with more than one source, we must conclude that the borderline value of the outcome reduces to a mere scintilla.[5]

---

4. We note that we do not believe a literal isolation of the "JET" formative is necessarily required for this purpose, although such a procedure would surely be adequate. *See Henri's Food Prods. Co. v. Kraft, Inc.*, 717 F.2d 352, 362 (7th Cir.1983) (isolation of word "whip" for secondary meaning as to "Miracle Whip"). We suggest that the "JET" formative could effectively be isolated in other unbiased ways, such as offering only two "–JET" names instead of six, and using fictitious prefixes with the "–JET" suffix.

5. In addition to the specific problems with the Suffix Study, the district court identified three global problems applicable to all three surveys presented by Spraying Systems. Of these, we believe that two reduce the probative value of the Suffix Study. First, a high market share may skew the results, as Spraying Systems' survey expert admitted. Yet no appropriate adjustment was made for Spraying Systems' market share, which appears to be about 60 percent. Second, the surveys targeted as respondents farmers rather than actual purchasers of the spraying equipment. Since a sizable portion of the parties' products are sold to distributors and equipment manufacturers, the selection of farmers only as the relevant universe limits the surveys' probative value even further. Spraying Systems responds with a quotation from *McCarthy* that "members of the trade would be the wrong universe" to prove secondary meaning. 2 McCarthy § 32:47, at 767–68. However, the quotation is taken out of context, for Spraying Systems fails to point out that *McCarthy's* proposition applies "[i]f the issue involves the state of mind of consumers" as opposed to dealers. *Id.* at 767 & n. 13; *see also Russ Berrie & Co. v. Jerry Elsner Co.*, 482 F.Supp. 980 (S.D.N.Y.1980).

Finally, a word about Spraying System's reliance on the "family of marks" doctrine is in order. A number of cases have explained that possession of several marks with a common suffix, prefix or syllable can give rise to a protected "family" of marks; the common element is the family "surname." The classic example is Eastman Kodak Company's family of KODA marks including KODACOLOR and KODACHROME. *See* 2 McCarthy § 23:19, at 102–03. Spraying Systems' essential argument in this litigation has been that it has a family of "–JET" marks for agricultural spray nozzles. The problem is that application of the doctrine requires a showing that the family feature or "surname" is distinctive enough to trigger recognition "in and of itself." *Id.* at 103; *American Aloe Corp. v. Aloe Creme Laboratories, Inc.*, 420 F.2d 1248, 1253 (7th Cir.), *cert. denied*, 398 U.S. 929, 90 S.Ct. 1820, 26 L.Ed.2d 91 (1970); *Marion Laboratories, Inc. v. Biochemical/Diagnostics, Inc.*, 6 U.S.P.Q.2d 1215, 1218–19 (TTAB 1988). But the family feature here is descriptive, and some authorities have even stated that descriptive terms cannot constitute the common element in a family of marks. *See, e.g., Lauritzen & Co. v. Borden Co.*, 239 F.2d 405, 407 (CCPA 1956); *Cambridge Filter Corp. v. Servodyne Corp.*, 189 U.S.P.Q. 99, 103 (TTAB 1975); David J. Kera, *Family of Marks*, 67 Trademark Rep. 419, 420 (1977). It may be more accurate to say that a descriptive term can serve as a family surname only where there is a strong showing of secondary meaning in the term. *See Norwich Pharmacal Co. v. Salsbury Laboratories*, 168 U.S.P.Q. 250 (TTAB 1970); *Fort Howard Paper Co. v. Nice–Pak Prods., Inc.*, 127 U.S.P.Q. 431, 432–33 (TTAB 1960).

In any event, we have concluded that the "JET" formative is descriptive and that Spraying Systems has failed to show that it has acquired secondary meaning. Spraying Systems argues that it is not required to establish rights in its use of "JET" alone, but only in its use of trademarks containing the "–JET" suffix. It relies on *J & J Snack Foods Corp. v. McDonald's Corp.*, 932 F.2d 1460, 1463 (Fed.Cir.1991), in which the court found McDonald's' family of "Mc" marks infringed by a competitor's "McPretzel," noting that "it is not correct that the formative itself must be a trademark in order to sustain a family of marks." But we are not requiring that "JET" itself be a trademark—only that "JET" generate recognition of a common origin of goods. *Id.* at 1462. The family surname in *J & J Snack Foods* ("Mc") was inherently distinctive, unlike the term in the case before us. It is difficult to establish a protectable family of marks on the basis of a common term that is descriptive, and we conclude that Spraying Systems cannot do so here.[6]

## C.

We address Spraying Systems' trade dress claim only briefly.[7] A product's trade dress is "the overall image used to present it to purchasers; it could thus include, to give a partial list, the product's size, shape, color, graphics, packaging, and

---

**6.** Apparently recognizing that its "family of marks" argument may be encountering difficulties, Spraying Systems also argues that it has shown infringement as to its *individual composite marks*. However, Spraying Systems does not and cannot seriously argue that Delavan's COLOR JET mark is likely to be confused with any one of Spraying System's individual marks considered by itself. As the TTAB and the district court found, the only genuine similarity in the marks is the "JET" formative itself. Just to be clear, we fully agree with the Board's holding that there is no genuine issue of fact as to a likelihood of confusion between Delavan's COLOR JET mark and any of Spraying Systems' individual marks. *See, e.g., Tektronix, Inc. v.*

*Daktronics, Inc.*, 534 F.2d 915, 916–17 (CCPA 1976), and cases cited (presence of highly suggestive or descriptive suffix generally insufficient to show likelihood of confusion). It is clear, however, that Spraying Systems' principal argument is its "family of marks" argument—that confusion is likely by virtue of its *set* of "–JET" suffix marks. On either theory, Delavan prevails.

**7.** It is not clear whether Spraying Systems has abandoned this claim on appeal. While its brief does not address the district judge's specific reasons for rejecting the claim, neither does it expressly decline to pursue it, as with the color-coding claim. *See supra* note 3.

label." *Vaughan Mfg. Co. v. Brikam Int'l, Inc.*, 814 F.2d 346, 348 (7th Cir.1987). Spraying Systems' basic argument, in the words of the district court, is that "when the word COLOR is combined with JET and color coded nozzles, as a whole it creates a situation of trade dress infringement even though each taken separately does not." 762 F.Supp. at 782. We agree with the district court that Spraying Systems has failed to show distinctiveness or secondary meaning in these combined features. The evidence presented to establish this claim, the "COLOR JET Name Study," suffered from flaws applicable to all the surveys, *see supra* note 5, as well as specific problems detailed by the district court. In particular, respondents were asked over the telephone what company or companies would come to mind if they received literature or saw a line of colored spray nozzles identified with the name COLOR JET. (Fifty-four percent named Spraying Systems or "Teejet.") The district court correctly held that the survey failed to replicate market conditions and was of minimal probative value for purposes of the trade dress claim. Spraying Systems does not argue with this assessment of the survey. In addition, Spraying Systems does not dispute that the packaging of the parties' products is significantly different and that each company's name is clearly labeled on the packaging.

Spraying Systems also presented several witness affidavits purportedly showing actual confusion. The district court's rejection of this evidence was entirely proper. The statements were solicited and drafted by Spraying Systems' counsel and were based on interviews with only its own customers. These factors are indicative of bias. *See, e.g., Imperial Serv. Sys., Inc. v. ISS Int'l Serv. Sys., Inc.*, 701 F.Supp. 655, 659 (N.D.Ill.1988); *Kroger Co. v. Johnson & Johnson*, 570 F.Supp. 1055, 1059 n. 7 (S.D.Ohio 1983); 2 McCarthy § 23:2, at 52–53. Moreover, as the district judge noted, the majority of the statements were not evidence of actual confusion at all, but only of *prospective* confusion. In the few instances where the statements arguably evidenced actual confusion, Delavan submit-ted statements from the same customers showing that they were not actually confused. Spraying Systems' witness affidavits fail to demonstrate a genuine issue of material fact.

### IV.

■ Finally, Delavan contends that Spraying Systems' appeal is frivolous and requests sanctions under Federal Rule of Appellate Procedure 38. Spraying Systems, in turn, has asked that sanctions be imposed on Delavan for its frivolous request for sanctions. To avoid an infinite regress, we shall resolve the matter: we deny both sides' requests. Sanctions under Rule 38 may be awarded if an appeal is frivolous and sanctions are appropriate. *Hartz v. Friedman*, 919 F.2d 469, 475 (7th Cir.1990). An appeal is frivolous "when the result is obvious or when the appellant's argument is wholly without merit." *Williams v. United States Postal Serv.*, 873 F.2d 1069, 1075 (7th Cir.1989). We cannot say that the result here is obvious or that Spraying Systems' argument is wholly devoid of merit. A grant of summary judgment on factual issues such as descriptiveness and secondary meaning is not a simple matter. This case presented a number of difficult issues and required consideration of a good deal of evidence. In addition, we have found some merit in at least one of Spraying Systems' arguments—that concerning the standard of review. Delavan's real argument here seems to be that Spraying Systems should be sanctioned for "substantive and material misrepresentations" in its briefs. We presume that we may sanction serious misrepresentations under Circuit Rule 38. While there are a few questionable characterizations of the law in Spraying Systems' opening brief, we do not believe that they rise to the level of sanctionable conduct: they appear to have resulted more from confusion than from any intent to mislead. We decline to award sanctions to either party.

### V.

Because there is no genuine issue as to any material fact and Delavan is entitled to

judgment as a matter of law, the judgment of the district court is

AFFIRMED.