**Deva Singh Sham SINGH, Plaintiff,**

v.

**V. PATEL & SONS, INC.,
et al., Defendants.**

No. 91 C 4723.

United States District Court,
N.D. Illinois,
Eastern Division.

April 28, 1994.

this memorandum opinion and order, both facets of its motion are denied.

*Summary Judgment Principles*

■ Familiar Rule 56(c) principles teach that to be "entitled to a judgment as a matter of law," the movant must establish the absence of any "genuine issue as to any material fact" (*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). In that respect a "genuine issue" requires that there be sufficient evidence for a jury to return a verdict in favor of the nonmovant (*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)), while a "material fact" is one that "might affect the outcome of the suit under the governing law" (*id.* at 248, 106 S.Ct. at 2510; *Pritchard v. Rainfair, Inc.*, 945 F.2d 185, 191 (7th Cir.1991)). In applying those principles this Court is not required to draw "every conceivable inference from the record—only those inferences that are reasonable" in favor of nonmovant Patel (*Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991)).

*Facts* [3]

What follows in this section will suffice to establish the framework for the discussion of Deva Singh's motion. Other relevant facts, which fit somewhat better into the substantive legal discussion, will be set out later in this opinion.

Deva Singh has sold basmati rice in this country for more than 20 years under the mark "No. 817 Elephant Brand," bearing

Timothy E. Levstik of Fitch, Even, Tabin & Flannery, Chicago, IL, for plaintiff.

John W. Moore, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Deva Singh Sham Singh ("Deva Singh") sues V. Patel & Sons, Inc. d/b/a "Patel Brothers" ("Patel" [1]), charging infringement of Deva Singh's trademark used to identify its basmati rice. Patel too markets a brand of basmati rice. Both parties' brands feature elephants in their titles and on their burlap sacks, and their other similarities and differences are discussed later.

Deva Singh has moved for summary judgment on two issues: (1) the validity of its mark and (2) the existence of a likelihood of confusion between its and Patel's trademarks and trade dress.[2] For the reasons stated in

1. This Court is of course well aware that "Patel" is perhaps the most common Indian name, much as "Smith" is (or at least was) thought of as the prototypical English name. But where individuals bearing the name Patel are referred to in this opinion, their full names will be used to avoid confusion.

2. Validity plus infringement assessed by the likelihood of confusion are the two elements necessary to establish claims under 15 U.S.C. §§ 1125(a) (false designation) and 1114(1) (federal trademark infringement), which form the first two counts of the Complaint. Deva Singh's third and fourth counts respectively charge common law trademark infringement and dilution. Deva Singh's Complaint prays for an injunction and $300,000 in damages.

3. In part because neither party seemed willing to let the other have the last word, their submissions ran to five memoranda rather than the usual three. That has complicated matters somewhat, because each party submitted two sets of exhibits with repetitive designations (numbers by Deva Singh, letters by Patel). To avoid confusion this opinion will use "P.Ex.—" or "D. Ex.—" for the original submissions and "P.R. Ex.—" and "D.R. Ex.—" for the later ones. For some unknown reason Deva Singh shifted to lettered exhibits in its final submission (its response to Patel's surreply), and those exhibits will be cited "P.Ex.—" with the letter designation.

registered trademark No. 1,308,227 (P.Ex. 4). That fragrant, nutty-flavored staple (which Deva Singh has also sold in India since the 1940s) is consumed largely (though not of course entirely) by individuals of Indian origin or ancestry—they purchase it at grocery stores that are in turn supplied by Deva Singh's wholesale distributors. Deva Singh's rice has traditionally been available in either 11 or 44 pound (5 or 20 kilogram) burlap sacks bearing its insignia: two concentric circles, with a blue elephant within the inner one and the block-lettered words "ELEPHANT BRAND ● TRADE MARK" filling the space between the circles. "No. 817" is prominently displayed above the circles. Deva Singh's insignia is predominantly blue in color but includes some red content as well.[4]

In 1984 Deva Singh customer Patel, a national distributor of Indian foodstuffs and owner of a chain of more than 20 retail grocery stores around the United States, began importing its own basmati rice marketed under the name "No. 718 Blue Elephant" brand. Its rice is packaged for Patel by American Dried Fruit of Bombay and is sold in burlap sacks bearing a blue elephant inside an octagon under the words "718 Blue Elephant" printed in red and blue. On the reverse side of the bag is a picture of Laxmi sitting in lotus position. Patel's bags come in 10 and 40 pound sizes.

Deva Singh initially sent Patel a notice of infringement (P.Ex. 9, Mafat Patel Dep. 11–12). When Patel disregarded that notice, Deva Singh commenced this action against Patel and its secretary Mafat Patel (who is also the general manager of its daily business activities). This opinion will address the issue of the validity of Deva Singh's mark only briefly, with the bulk of the discussion devoted to the infringement question.

### Validity

◼ Validity of a mark is a question totally distinct from the issue of likelihood of customer confusion. Not only is the proof of validity nondispositive of the latter issue, but it is not even one of the factors to be considered in evaluating the prospect of confusion (*Source Services Corp. v. Chicagoland Job-Source, Inc.*, 643 F.Supp. 1523, 1532 (N.D.Ill. 1986), citing and quoting *Union Carbide Corp. v. Ever–Ready Inc.*, 531 F.2d 366, 377 (7th Cir.1976)):

> Validity is a matter of the mark's ability to stand *as* a mark.... But likelihood of confusion is a matter of comparing one mark's recognition factor with that of another.

◼ In this instance the passage of time has rendered Deva Singh's Registration No. 1,308,227 (entered on the Trademark Principal Register on December 4, 1984) incontestible under 15 U.S.C. § 1065. But incontestability simply obviates any need for Deva Singh to prove the existence of secondary meaning for its mark to seek enforcement against a claimed infringer (*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 196, 205, 105 S.Ct. 658, 662, 667, 83 L.Ed.2d 582 (1985))—it does not at all equate to establishing the mark's status as valid in terms of its enforceability against the world (as contrasted with establishing Deva Singh's own right to use the mark).

If the current posture of this action were at the trial stage, calling for a decision on the merits, this Court might well address both validity and infringement (something that the Federal Circuit has encouraged in the trial context in another sphere of intellectual property law, the field of patents—see, e.g., *Medtronic, Inc. v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1582–83 (Fed.Cir.1983)). But in this case the next-discussed topic of infringement defeats Deva Singh's motion in any event—and even more importantly, in the summary judgment context the question of the registered mark's validity poses a serious Article III case-or-controversy problem.

As part of its response to the current motion, Patel has tendered evidence that Deva Singh has introduced into the market a materially modified version of its incontesta-

---

4. Distributors may choose to design their own packaging, rather than using Deva Singh's mark. For example, House of Spices (India) Inc. ("House of Spices") has constructed its own em-blem, featuring Deva Singh's design flanked to its left by an equally prominent picture of "Laxmi," a Hindu goddess of commerce.

ble mark. It is now primarily red (where the registered mark had been almost all blue), and the "No. 817" at the top has become red, as has the phrase "ELEPHANT BASMATI RICE"—which is now displayed horizontally (rather than following the curve of the outer circle) below a formerly blue but now blackened elephant. Moreover, a red mandabam (curtained platform) stamped "817" currently rests atop Deva Singh's elephant, which now sports a new orange blanket. Both concentric circles enclosing the elephant have been scrapped altogether.

While not denying the existence of that really dissimilar new design, Deva Singh asserts that it has not discontinued or abandoned its original one: It presents the declaration of Ravinder Chatha (P.Ex. D) that he or she is "a principal of Deva Singh" and that the company is currently selling under the old trademark and has no intention of discontinuing its use. But Patel counters with the affidavits of Mahesh Patel, Mohammed Bashir and Arvind Kumar Patel, retail grocers serving Indian and Pakistani clientele, who state that as of November 1993 Deva Singh's rice is no longer delivered to them in the former bags but instead arrives in bags bearing the new design. Even more significantly, the supplemental affidavit of Rakesh Patel reflects that he visited 30 Indian and Pakistani grocery stores around Chicago and confirmed that as of November 1993 Deva Singh's rice was no longer being distributed in the former sack (D.R. Ex. H).

With the necessary inferences drawn in Patel's favor, there is at least a material question whether the registered mark is still in use. If it is not, any declaration of its validity would be no more than an advisory opinion. That is a risk this Court will not undertake, especially when Deva Singh's motion fails on its other branch in all events.

*Likelihood of Confusion*

■ That second branch calls for judicial inquiry into the probability that consumers in the relevant market will confuse the alleged infringer's mark with the plaintiff's mark (*Smith Fiberglass Products, Inc. v. Ameron, Inc.*, 7 F.3d 1327, 1329 (7th Cir.1993)). As our Court of Appeals framed the issue in *AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 618 (7th Cir.1993), quoting *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 957 (7th Cir.1992):

> The "keystone" of trademark infringement is "likelihood of confusion" as to source, affiliation, connection or sponsorship of goods or services among the relevant class of customers and potential customers.[5]

*Smith*, 7 F.3d at 1329 has recently enumerated the seven factors that commonly govern the analysis:

> (1) similarity between the marks in appearance and suggestion;
>
> (2) similarity of the products;
>
> (3) area and manner of concurrent use;
>
> (4) degree of care likely to be exercised by consumers;
>
> (5) strength of complainant's mark;
>
> (6) actual confusion; and,
>
> (7) intent of defendant "to palm-off his product as that of another."[6]

None of those factors is itself conclusive, and the weight accorded each will vary from case to case (*id.*). Nor is the list intended to be exhaustive (*Nike, Inc. v. "Just Did It" Enterprises*, 6 F.3d 1225, 1228 (7th Cir. 1993)).[7] As *AHP*, 1 F.3d at 616 put it, quoting *Schwinn Bicycle Co. v. Ross Bicycles, Inc.*, 870 F.2d 1176, 1187 (7th Cir.1989):

> [T]he plaintiff need not prove each and every factor in order to prevail. However,

---

**5.** [Footnote by this Court] *AHP, id.,* 1 F.3d at 615 n. 6 reconfirmed the similarity of purpose of trademark and trade dress protection. And where marks and products of the type at issue here are involved, the same principles define the existence or nonexistence of the likelihood of confusion. This opinion therefore eschews any separate discussion of Deva Singh's trade dress claim—the outcome is the same in any event.

**6.** [Footnote by this Court] Those factors have undergone some degree of evolution over time. For example, *Ziebart Int'l Corp. v. After Market Assoc., Inc.,* 802 F.2d 220, 226 (7th Cir.1986) had spoken of "distinctiveness," "channels of distribution" and "identity of the advertising media used."

**7.** Thus in *Nike, id.* an additional factor that the court considered was marketing channels used by the parties.

the converse is also true; neither is it required that the defendant refute each and every factor. The weight and totality of the most important factors in each case will ultimately be determinative of the likelihood of confusion, not whether the majority of the factors tilt the scale in favor of one side or the other.

By definition the likelihood-of-confusion issue is fact-intensive, as has again been made plain in *AHP*, 1 F.3d at 616, quoting *Forum Corp. of N. Am. v. Forum, Ltd.*, 903 F.2d 434, 438 (7th Cir.1990):

> We have stated a number of times that the trial court's ultimate conclusion on the likelihood of confusion is a finding of fact.

For that reason summary judgment in the trademark infringement context "must be approached with great caution" (*AHP*, 1 F.3d at 616). At the same time, "[o]ne who adopts a mark similar to another already established in the marketplace does so at his peril. . . . All doubts must be resolved against him." (*McGraw–Edison Co. v. Walt Disney Productions*, 787 F.2d 1163, 1167 (7th Cir.1986), quoting *Beer Nuts, Inc. v. Clover Club Foods Co.*, 711 F.2d 934, 941 (10th Cir.1983); cf. *Forum Corp.*, 903 F.2d at 440). This opinion turns to the relevant factors, mindful of the competing considerations.

*Factors 2, 3 and 4*

Both logic and intuition suggest that *Smith*'s first-listed factor—similarity or dissimilarity of the competing marks—is likely to bulk largest in the likelihood-of-confusion inquiry. But here it seems worthwhile to spend a few moments at the outset in treating the next-listed factors, both because of their lesser significance and because they can be dispatched quickly.

First, neither side has articulated a genuine substantive difference between brands of basmati rice. It would seem likely that in the marketplace the parties' products would be pretty much fungible. Indeed, Patel Mem. 3 seems to concede as much. Although that factor points somewhat in Deva Singh's favor (*Nike*, 6 F.3d at 1230 ("When the goods are in close competition, trademarks need not be as similar in order to find an infringement")), Deva Singh undercuts that a bit by arguing in its own Mem. 2–3

(citing two newspaper food reviews) that its product is distinctly high-end.

It also weighs in Deva Singh's favor that both parties' rice targets the same ethnic population and utilizes the same channels of distribution. Individuals of Indian ethnicity are the typical purchasers of both brands of rice, primarily from grocers who are also of Indian descent, indicating a similar "area and manner of concurrent use" (*Smith*, 7 F.3d at 1329). Interestingly, once again Deva Singh offers a contention that could inadvertently work against that advantage: P. Mem. 19 says "In many instances, merchants may carry either '817 rice' or '718 rice,' but not both." If that is so, the likelihood-of-confusion inquiry would appear to move up one level, from the ultimate consumer of rice to the retail customers from Deva Singh and Patel. And on that score it would at least seem that the presumably higher level of sophistication of retail merchants would lessen any such likelihood (*Smith*'s fourth factor).

In that respect, even if the degree of consumer care is instead focused on the class of ultimate consumers, neither party makes any significant argument on the point. While products with relatively low price tags generally enhance the risk of confusion (*AHP*, 1 F.3d at 616–17), it is unclear to what extent that consideration applies to 44 pound bags that can cost nearly $40 (P. Mem. Ex. 23) and may last a family for a couple of months (P. Mem. Ex. 12, Umaranikar Dep. 59).

In sum, *Smith*'s considerations 2 through 4 run slightly in Deva Singh's favor, but they really do not warrant any significant weight under the circumstances presented here (as *McGraw–Edison*, 787 F.2d at 1168 says, "this court has reversed lower court decisions that have placed excessive importance on certain factors"). And so as signaled earlier, this opinion now turns to more decisive considerations—the first one and the last three.

*Factor 1: Similarity of the Marks*

Evaluation of trademark similarities must always take place against the backdrop of the relevant marketplace (*Source Services*, 643 F.Supp. at 1529; *Forum*, 903 F.2d at 439, quoting *International Kennel Club v. Mighty Star, Inc.*, 846 F.2d 1079, 1088 (7th Cir.1988)

(comparisons are to be conducted "in light of what occurs in the marketplace, not in the courtroom")). Although some cases suggest that particularized side-by-side comparisons of the competing marks can be relevant in assessing the likelihood of confusion (see, e.g., *Smith*, 7 F.3d at 1329), both parties agree that side-by-side comparison is not the correct basis for reviewing similarity here (P. Mem. 16; D. Mem. 3–4). Instead the preferable marketplace evaluation looks at the entire "perceptual gestalt" (*Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1431 (7th Cir.1985)) or, as *Nike*, 6 F.3d at 1230 put it, the "total concept and feel." Thus *James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266, 275 (7th Cir.1976) explained:

> The sign must therefore be evaluated on the basis of its likely effect upon consumers who do *not* have Distiller's label before them, but who may have a general, vague, or even hazy, impression or recollection of Distiller's marks such as may trigger a belief that a relation exists between Distiller and the enterprise identified by the sign.

In this instance the relevant market comprises, at best from Deva Singh's perspective,[8] those consumers who frequent the rice aisles of Indian grocery stores. Hence the question is whether the impression left on those consumers by the parties' competing marks is so similar that no valid question of fact remains for submission to a jury. Analysis shows plainly that disposition of the issue as a matter of law would be unwarranted.

To be sure, Patel's No. 718 is the reverse sequence of Deva Singh's No. 817, and it is also true that both burlap bags are printed with red and blue ink and that both of them feature not only pictures of elephants enclosed within borders[9] but also have the word "elephant" in their prominently-displayed brand names. In addition, the rice is sold in similar though not identical quantities (Patel's bags weigh 10 and 40 pounds, as compared with Deva Singh's 11 and 44).[10] But when the similarities are appraised not in a vacuum but in the context of the real world marketplace, the force of Deva Singh's argument is sharply diminished.[11]

Patel has collected and submitted pictures of bags sold by a number of other rice companies—bags whose appearance, in a number of instances, is just as similar to Deva Singh's mark as Patel's (if not more so). This is not at all a matter of limiting a party's right to sue one infringer just because it has failed to sue others (an impermissible notion in intellectual property litigation). Instead the point is that the two marks at issue here must be viewed in the total universe of which they are a part. And that universe, including those third-party marks, reveals that it is very common indeed for basmati rice exporters to display three digit numbers conspicuously on their burlap sacks—numbers of a type that rob Deva Singh's of any real distinctiveness—and that elephants too are the order of the day on rice bags (scarcely a surprise, given the importance of the elephant in India's culture).

**8.** As the preceding section suggests, Deva Singh has itself proffered an argument that suggests that the retailers who buy from it and from Patel should instead be considered as the relevant market. Given the need to draw Patel-oriented inferences on the present motion, this Court could well adopt that perspective here. And in light of what would seem to be the lesser tendency of such knowledgeable buyers to be victimized by confusion as between the competing marks, the conclusion reached in the ensuing text of this opinion would be even more firmly supported.

**9.** As already stated, however, Patel's elephant is enclosed within an octagon rather than inside of Deva Singh's concentric circles.

**10.** Patel's depiction of the goddess Laxmi on the back of its bag has no counterpart on Deva Singh's bag, though the same goddess is featured on House of Spices' bags.

**11.** Patel points out some dissimilarities in the parties' usages—for example, it states that their elephants are in different moods (Patel's is said to be "happily marching," while Deva Singh's "stands soberly"), they face in opposite directions (left versus right) and they carry their trunks differently (up versus down). As for the use of blue and red ink, Patel's mark is very heavily blue, while Deva Singh's is more balanced. Finally, Deva Singh's sack contains much more writing than Patel's minimalist version. But there is no need to evaluate the significance of those distinctions taken alone, for they factor into the total picture next discussed in the text.

Here are a number of the bags that Patel has introduced for this Court's examination:

- No. 871 Elephant Brand Basmati Rice (D. Ex. K): an elephant remarkably similar to Deva Singh's,[12] enclosed within concentric rectangles. As with Deva Singh's bag, the words "ELEPHANT BRAND" are spelled between the two layers of border. Exported by USHA AGRO, Bombay.

- No. 517 Green Elephant Basmati Rice (D. Ex. L): an elephant dancing on two legs inside a circle, above which the words "ELEPHANT BRAND" are arranged between two concentric half circles. Exported by Jay Exports, Bombay.

- No. 878 Double Elephant Indian Basmati Rice (D. Ex. M): two elephants facing each other trunk to trunk, raised up on their hind legs within an imperfect circle. Above them are the words "ELEPHANT BRAND" between two concentric half circles. Shippers are listed as Amritsar.

- No. 2546 Double Elephant Flag Brand ("B. Natha Singh Karam Singh") (D. Ex. N): two elephants facing each other, one holding in its trunk a flag with a cross on it.

- Airawat Brand Basmati Rice (D. Ex. O): a walking elephant inside a cloud-like roughly oval shape. According to D. Mem. 4, "Airawat" means "elephant" in a Hindi dialect.

- Hathi Brand Basmati Rice (D. Ex. P): elephant with its trunk upraised. D. Mem. 4 states that "Hathi" also translates to "elephant" in another Hindi dialect.

- Edenfine Basmati Rice (D. Ex. Q): two much less prominent elephants in the bottom corners of the bag.

- Examples of packaging for rice other than basmati include Double Elephant Jasmin Rice from Bombay (two upright elephants high-fiving inside a three-quarters circular wreath) and Maya Jasmin Rice (a single elephant centered under the brand name) from Thailand (D. Ex. T).

Of the sacks with numbers in their titles, each displays the number above the depiction of the elephant or elephants in a manner similar to Deva Singh's design.[13] Also common are 40–pound bag sizes, as are borders around the elephants. Patel's explanation for the omnipresence of the majestic beast is cultural, rooted in superstition and possibly religion (it cites to the deposition of Ravinder Pal Singh Chata, where he admits "Elephant is a very popular brand and animal in India. It brings good luck" (D. Ex. I, Dep. 47)). As Rakesh Patel concluded his affidavit (D. Ex. J, Aff. ¶ 5):

> In sum, the elephant is a very popular symbol in Asian culture, similar to the bald eagle in the United States and is used as part of numerous trademarks on Asian products.[14]

In response Deva Singh urges that Patel has not sufficiently demonstrated that those other brands are available or even exist in this country. Deva Singh's counsel Michael Dolan files an affidavit challenging Patel's failure to provide documentation "to substantiate their claim that numerous third party 'elephant' brand basmati rices are sold throughout the United States" (P.R. Ex. 12 ¶ 3).[15] To the request for specific sales in-

12. It appears that the only difference in the designs is that one shows a single tusk, while the other shows two.

13. Other exhibits include "No. 917 Eastern Basmati Rice" (D. Ex. S) and "No. 718 STN" Indian basmati rice (D. Ex. R). Moreover, the integers 8, 1 and 7 are highly over-represented in Patel's exhibits (four, four and five examples respectively)—in the aggregate, those three numerals appear more than twice as often in the Patel exhibits than the other seven numerals combined.

14. In further support of that proposition, Patel submits numerous labels lifted from Asian food products bearing the likeness of an elephant (D. Ex. U).

15. In a classic example of overreaching, Deva Singh's final submission (its Response to Patel's Surreply) says that "defendants have provided no sales invoices or receipts, no advertisements, no bills of lading and/or any other material to support this allegation." But after all, Patel has instead supplied this Court with photocopies of the actual burlap sacks depicting the various brands—is Deva Singh contending that those were fabricated for this lawsuit?

voices, Patel's Surreply at 5 sensibly answers that it "cannot give records which [it] do[es] not have." Patel's point is not that *it* distributes those brands but rather than *other* companies do so, companies whose sales documents Patel obviously cannot hand over. As stated by Patel's now-deceased lawyer Cyriac Kappil (D.R. Ex. I, Aff. ¶ 6):

> These brands were or are carried by various retail stores in the U.S. who are not connected with any of the defendants. Defendants do not have sales records of other retail establishments.

Deva Singh would also have this Court ignore (as it cannot) the affidavit of Indian wholesaler Rakesh Patel, who states (D. Ex. J ¶ 2) that "he is familiar with the various brands of basmati and other rices offered for sale in groceries in the Indian and Pakistani communities throughout the United States." And those brands include the ones described earlier. Moreover, that testimony is supported not merely by registration numbers but by reproduction of the actual bags (see n. 15).

Even in terms of Deva Singh's registered mark, then, the facts before this Court reflect a host of bags of like size, having various identifying numbers with substantial similarities and sharing depictions of elephants together with the word "elephant" or its equivalent.[16] That cannot be the stuff of which a summary judgment in Deva Singh's favor may be fashioned (as this Court said in *Source Services,* 643 F.Supp. at 1529, it has not been shown that a trial "would yield a 'foregone conclusion'").

*Factor 5: Strength of Deva Singh's Mark*

Marks are sometimes ranked in terms of a five-category spectrum of ascending strength: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary and (5) fanciful (*Two Pesos, Inc. v. Taco Cabana, Inc.,* — U.S. —, —, 112 S.Ct. 2753, 2757, 120 L.Ed.2d

615 (1992); *Dunn v. Gull,* 990 F.2d 348, 351 (7th Cir.1993)). Of those, the last three and sometimes the second are regarded as distinctive, either inherently or arising out of secondary meaning (*Two Pesos,* — U.S. at ——–——, 112 S.Ct. at 2757–58).[17] And it will be recalled that *Park 'N Fly* obviates any need to prove a secondary meaning to protect a merely descriptive mark.

No. 817 Elephant Brand is clearly not a generic mark. Furthermore, while descriptiveness in terms of product functions or attributes can obviously sap the strength of a mark, Deva Singh's does not really reveal anything about the nature of its rice (and under *Park 'N Fly* Deva Singh's incontestable mark could not be challenged as merely descriptive anyway). At the other end of the continuum, Deva Singh's mark is certainly not fanciful (defined in *McGraw–Edison,* 787 F.2d at 1171 as utilizing "'coined' words which have been invented for the sole purpose of functioning as a trademark"). That leaves two possible choices: No. 817 Elephant Brand could be considered at best as arbitrary and at worst as suggestive, and it would be moderately strong in either case. While that militates somewhat in favor of protection (*Nike,* 6 F.3d at 1231), it must be recognized that the widespread third-party usage of the elemental components of Deva Singh's mark can greatly dilute its strength.

Deva Singh rightly observes that third-party usage is germane only to the extent that those marks are actually used and recognized in commerce (*McGraw–Edison,* 787 F.2d at 1172). But this opinion has already said that Patel is not obligated to provide actual invoices or sales records that it has no way of possessing. Patel has furnished copies of the actual burlap sacks for six brands of basmati rice featuring elephants in their name and design, four of

---

**16.** Because Patel's photocopies of the sacks of third-party exporters are black and white, this Court has no way to assess the prevalence of red and blue colors among them. That could be a relevant consideration (see *AHP,* 1 F.3d at 617–18), though no one can claim a monopoly in those terms (see *NutraSweet Co. v. Stadt Corp.,* 917 F.2d 1024, 1027–28 (7th Cir.1990)).

**17.** Secondary meaning connotes "a mental association in buyers' minds between the alleged mark and a single source of that product" (*Spraying Sys. Co. v. Delavan, Inc.,* 975 F.2d 387, 393 (7th Cir.1992)). *Two Pesos,* — U.S. at ——–——, 112 S.Ct. at 2759–61 teaches that where a mark is inherently distinctive in its own right, no showing of secondary meaning need be made to prevail on a Lanham Act claim.

which sacks also display a three or four digit number atop the sack (D. Exs. K–Q). In conjunction with Rakesh Patel's affidavit testimony that those brands are sold throughout the United States (D. Ex. J ¶ 2), plus the related fact that the bags are printed largely in English and together with the need to draw all reasonable inferences in Patel's favor, that evidence cuts against the strength of Deva Singh's mark. As this Court quoted from an earlier case in *Spraying Sys. Co. v. Delavan, Inc.,* 762 F.Supp. 772, 778 (N.D.Ill. 1991), *aff'd,* 975 F.2d 387 (7th Cir.1992):

> [T]hird party registrations ... can show that a particular term has been adopted by those engaged in a certain field or industry and that said term has less than arbitrary significance with respect to certain goods or services.

Two other factors operate to diminish the strength of Deva Singh's mark. One is its substantial transformation of, and its departure from, the registered mark on its bags distributed after November 1993, as attested to by the four Indian grocers (a matter as to which nonmovant Patel's version must be credited in evaluating Deva Singh's motion for summary judgment). And the other is the already-discussed fact that each of Deva Singh's wholesale distributors is allowed to design its own packaging for No. 817 Elephant Brand, with the resultant personalized variations diluting the strength of the mark and further generating an issue of material fact on that issue.

*Factor 6: Actual Confusion*

■ Although no demonstration of actual confusion is needed to establish a likelihood of confusion (*AHP,* 1 F.3d at 618), it can certainly help (*Freedom Sav. & Loan Ass'n v. Way,* 757 F.2d 1176, 1185 (11th Cir.1985) ("Actual confusion by a few customers is the best evidence of likelihood of confusion by many customers")). That may be somewhat tempered, however, by the principle that although "very little proof" of actual confusion can perhaps suffice, "de minimis evidence of confusion may be discounted" (*Forum Corp.,* 903 F.2d at 443).

In this instance Deva Singh tenders no market studies—it offers instead the affidavits of two individuals, one claiming to have experienced confusion himself and the other purporting to have witnessed it in others. First, Avinasm Umaranikar ("Umaranikar"), who says he is a long-time purchaser of No. 817 Elephant Brand, relates an occasion last year when he inadvertently purchased a bag of No. 718 Blue Elephant brand instead. Second, an Indian grocer named Narendra V. Shah ("Shah") states that many of his customers have confused the two brands. Shah discusses dissatisfied patrons who tried to return Patel's brand to his store although he has never sold it, and others who complained that Patel stores sell the "same" brand of rice at a cheaper price.

Patel tries to poke holes in the Umaranikar story by pointing out that he admitted his wife normally does his shopping and by emphasizing the long and ongoing social and business relationship between Umaranikar and Deva Singh's agent G.L. Soni. Quite apart from that credibility issue, though, the testimony of a single individual has little impact (see *Union Carbide,* 531 F.2d at 383). Shah's affidavit has more potential force, although Patel does raise legitimate questions about his objectivity.[18] Patel also points out that Shah fails to identify any of the many individuals who he claimed were misled, and it then objects generally on hearsay grounds (*Smith,* 7 F.3d at 1331 says, "Although we require little proof of actual confusion to demonstrate likelihood of confusion, at minimum the district court must find the proof to be admissible").

More importantly, Patel counters with the deposition of Bhavana Patel (D. Ex. W) and the affidavit of Rajesh Patel (D. Ex. X)— both proprietors of Indian grocery stores with no relation to the defendants—plus the deposition of Mahendra Patel (D. Ex. F). All three of them declare that they are unaware of a single example of actual confusion.

Both parties' informal non-surveys of consumer confusion bring to mind the teaching in *AHP,* 1 F.3d at 618 (citation omitted):

---

18. Shah's credit has been cut off by other suppliers, so that he has an interest in preserving his

supply through House of Spice.

While there will be occasions when the proffered survey is so flawed as to be completely unhelpful to the trier of fact and therefore inadmissible, such situations will be rare.... We believe that any shortcomings in the survey results go to the proper weight of the survey and should be evaluated by the trier of fact.

That statement applies with extra force where (as here) the parties' submissions are sparse and anecdotal, rather than presenting any methodical effort to determine the actuality and prevalence of customer confusion. What has been offered falls far short of demonstrating actual confusion unequivocally. What we have is a question of fact that is fraught with determinations best left to a trier of fact.

*Factor 7: Palming Off*

Deva Singh's argument here, cast in terms of a claimed lack of good faith, accuses Patel of intentionally selling its No. 718 Blue Elephant Brand to customers requesting No. 817 Elephant Brand. Two investigators hired by Deva Singh to ask Patel employees for Deva Singh's brand testified that they were given Patel's rice and told it was the "same rice" (P. Exs. 17 and 18).[19] Patel responds with affidavits from the grocers at the stores in question stating that they would never do such a thing (D. Exs. F and G). Quite apart from the fact that the conflicting versions cannot be resolved without making a credibility determination (which is impermissible at the summary judgment stage), it is unclear whether (assuming that the incidents took place) they may not simply have been a few instances of overzealous and improper sales tactics by in-store sales personnel, not ascribable to Patel in the institutional sense.[20]

**19.** For the present, this opinion will ignore the fact that the clerks' asserted statements might have been literally true (that is, if basmati rice is really fungible). That approach would inflict major damage on our advertising industry, which devises massive campaigns and spends enormous amounts of clients' money to persuade the consuming public that identical (or essentially identical) products are really different.

**20.** To bolster its good faith position, Patel offers evidence that it originally adopted the No. 718

*Conclusion*

Numerous genuine issues of material fact preclude the entry of summary judgment. Deva Singh's Rule 56 motion is denied.

Blue Elephant mark after receiving written advice from its trademark counsel that the abundance of elephants associated with food products made opposition to its registration unlikely (D. Ex. H, referring to "the beneficial situation of the trademark examining attorney having determined that there are no other marks registered for same or similar products that would be infringed by the registration of your mark, nor is your mark confusingly similar to any other mark").