896 F.Supp. 456 (1995)
FIRST KEYSTONE FEDERAL SAVINGS BANK
v.
FIRST KEYSTONE MORTGAGE, INC.
Civ. A. No. 94-CV-1894.
United States District Court, E.D. Pennsylvania.
August 16, 1995.
*457 *458 Eugene E. Renz, Jr., Jeffrey K. Rucker, Eugene E. Renz, Jr., P.C., Media, PA, for plaintiff.
Peter J. Mooney, Laura W. Brewer, White and Williams, Philadelphia, PA, for defendant.

MEMORANDUM
JOYNER, District Judge.
Before this Court are cross-motions for summary judgment. Plaintiff is First Keystone Federal Savings Bank and Defendant is First Keystone Mortgage, Inc. The first two counts of Plaintiff's Complaint state federal trademark infringement and false designation of origin claims under the Lanham Trademark Act of 1946, as amended, 15 U.S.C. §§ 1051-1127 (1963, 1982 & Supp. 1995). The other three counts state claims for unfair competition, trademark misappropriation and common law trademark infringement.

STANDARD OF REVIEW
In considering a motion for summary judgment, a court must consider whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court must determine whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).
In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party and all reasonable inferences must be drawn in favor of the non-moving party. Id. at 256, 106 S.Ct. at 2514. Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the non-moving party must establish the existence of each element of its case. J.F. Feeser, Inc. v. Serv-A-Portion, Inc., 909 F.2d 1524, 1531 (3d Cir.1990), cert. denied, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)).

FACTUAL BACKGROUND
According to the Complaint, in March, 1985, Plaintiff registered the name and mark "First Keystone Federal" with the Principal Register of the United States Patent and Trademark Office. This registration alleged a date of first use of January, 1982 for banking services. Since registration, Plaintiff's mark has been in continuous use and has become incontestable.
It is uncontested that Defendant incorporated under the name First Keystone Mortgage, Inc in 1985 and began business in 1987. In 1988, one of Plaintiff's employees became aware of Defendant's similar name and contacted Defendant's President to discuss the similarity. Defendant's President did not wish to discuss the matter with a junior manager of Plaintiff, and the matter was dropped until 1993 when Plaintiff mailed Defendant a cease-and-desist letter. This litigation soon followed.

*459 ANALYSIS
The main issues the parties have raised to this Court are:
(a) whether Plaintiff's interest in its mark can be protected and
(b) if so, whether Defendant infringed that mark.

A. Protection of Plaintiff's Mark
Under judicial interpretations of the Lanham Act, a party can establish trademark infringement by showing that (1) its mark is valid and legally entitled to protection; (2) it is owned by plaintiff; and (3) defendant's use of the mark is likely to confuse consumers. Ford Motor Co. v. Summit Motor Prods., 930 F.2d 277, 291 (3d Cir.), cert. denied, 502 U.S. 939, 112 S.Ct. 373, 116 L.Ed.2d 324 (1991) (quoting Opticians Ass'n v. Independent Opticians, 920 F.2d 187, 192 (3d Cir.1990)). When a plaintiff's mark has been registered and has become "incontestable" under 15 U.S.C. § 1065, the elements of validity, ownership and entitlement to protection are conclusively proved. Id. If a mark is not incontestable, a plaintiff must show that its mark is valid in that it has a secondary meaning. Id.
In this case, both parties appear to concur that Plaintiff's mark is incontestable under 15 U.S.C. § 1065. Incontestability is not as envious a status as the name implies, however. The Lanham Act provides for eight defenses against an incontestable mark. 15 U.S.C. § 1115(b). If a defendant can prove one of these defenses, which include laches, estoppel and acquiescence, then the plaintiff loses the presumptions of validity, ownership and right to protection. Ford Motor Co., 930 F.2d at 291.
Defendant argues that Plaintiff's mark is contestable due to the doctrines of laches and acquiescence and because the mark has no secondary meaning.

1. LACHES
Laches is an equitable doctrine that prevents recovery when a defendant can show (1) inexcusable delay in instituting suit and (2) prejudice to the defendant resulting from such delay. University of Pittsburgh v. Champion Prods., Inc., 686 F.2d 1040, 1044 (3d Cir.), cert. denied, 459 U.S. 1087, 103 S.Ct. 571, 74 L.Ed.2d 933 (1982) (citing Gruca v. United States Steel Corp., 495 F.2d 1252, 1258 (3d Cir.1974); Sobosle v. United States Steel Corp., 359 F.2d 7, 12-13 (3d Cir.1966)).
Defendant argues that Plaintiff inexcusably delayed instituting suit because it is uncontested that Plaintiff was aware of Defendant at least by 1988 when Plaintiff's employee called Defendant's President about their similar names. Defendant argues further that it has been prejudiced by the delay between 1988 and now in that it expended resources on advertising and expanding its business. Defendant offers its President's deposition to support this allegation of prejudice.
In return, Plaintiff argues that Defendant has not demonstrated laches. First, it offers evidence that Defendant's competing activities dramatically increased in 1992 and 1993. Pl.'s Br. at Exs. D & E. The Third Circuit has held that when an alleged infringement changes magnitude, a plaintiff is not guilty of laches if it acts promptly after the nature of the infringement changes. University of Pittsburgh, 686 F.2d at 1046. Second, Plaintiff asserts that Defendant was not prejudiced by the delay. Plaintiff proffers an excerpt of Defendant's President's deposition testimony, where he stated that Defendant did not do anything in reliance on Plaintiff's inactivity.
We find that the parties have produced conflicting evidence on both elements of laches. For this reason, we find genuine issues of material fact and must deny Defendant's request for summary judgment based on laches. As a result of this ruling, we need not examine Plaintiff's affirmative defenses to laches.

2. ACQUIESCENCE
Defendant also argues that Plaintiff's mark is contestable because Plaintiff acquiesced in Defendant's name. 15 U.S.C. § 1115(b)(8); Procter & Gamble Co. v. J.L. Prescott Co., 102 F.2d 773, 780 (3d Cir.), cert. denied, 308 U.S. 557, 60 S.Ct. 80, 84 L.Ed. *460 461 (1939). The evidence it proffers on this point is that in 1994 Plaintiff conducted business with Defendant by buying a mortgage that Defendant had issued.
Plaintiff produces evidence to indicate that it actually bought the mortgage from third parties, who had previously bought it from Defendant. Pl.'s Br. at Ex. G. We find that this dispute raises an issue of material fact as to whether Plaintiff did business with Defendant. We also find that even if Plaintiff did conduct one piece of business with Defendant, it is inconclusive whether this amounts to acquiescence. For these reasons, we deny this portion of Defendant's motion for summary judgment.

3. SECONDARY MEANING
Defendant's final argument on the question of whether Plaintiff's mark is entitled to protection is that the mark has no secondary meaning. Above, we denied Defendant's attacks on the incontestability of Plaintiff's mark. As a result, and taking Plaintiff's facts as true, its mark is considered incontestable for the purposes of this motion. Anderson, 477 U.S. at 256, 106 S.Ct. at 2514; 15 U.S.C. § 1115(b). A secondary meaning analysis is only relevant when a mark is contestable. Ford Motor Co., 930 F.2d at 291. Because this mark is incontestable for the purposes of this motion, we will not discuss Defendant's secondary meaning analysis.

B. Infringement
To prove trademark infringement, a Plaintiff must show validity, right to protection, ownership and likelihood of confusion. Ford Motor Co., 930 F.2d at 291. Above, we ruled that for the purposes of this memorandum, Plaintiff's mark is incontestible, and therefore, Plaintiff has established the first three elements of trademark infringement. Accordingly, we turn now to the issue of reasonable likelihood of confusion in the market-place as a result of Defendant's use of the name First Keystone Mortgage, Inc.
In this Circuit, courts use ten factors to determine whether a certain use infringes upon a registered trademark by causing a likelihood of confusion. Scott Paper Co. v. Scott's Liquid Gold, Inc., 589 F.2d 1225, 1229 (3d Cir.1978). These ten factors are:
1. the degree of similarity between the owner's mark and the alleged infringing mark;
2. the strength of the owner's mark;
3. the price of the goods and other factors indicative of the care and intention expected of consumers when making a purchase;
4. the length of time the defendant has used the mark without evidence of actual confusion;
5. the intent of the defendant in adopting the mark;
6. the evidence of actual confusion;
7. whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media;
8. the extent to which the targets of the parties' sales efforts are the same;
9. the relationship of the goods in the mind of the public because of the similarity;
10. other facts suggesting that the consuming public might expect a prior owner to manufacture a product in the defendant's market. Id.

A party need not show every factor to succeed on an infringement claim, nor does every factor weigh the same amount. Smith Fiberglass Prods. v. Ameron, 7 F.3d 1327, 1329 (7th Cir.1993); Lois Sportswear, U.S.A. Inc. v. Levi Strauss & Co., 799 F.2d 867, 872 (7th Cir.1986); American Diabetes Ass'n v. National Diabetes Ass'n, 533 F.Supp. 16, 20 (E.D.Pa.1981), aff'd, 681 F.2d 804 (3d Cir. 1982). Here, the parties have presented evidence only on certain factors, and it is only those, therefore, that this Court will discuss.

A. Similarity of the Marks
Plaintiff argues that its mark and Defendant's name are very similar. Plaintiff further argues that the dominant portions of its mark and Defendant's name are the words "First Keystone." It asserts that when the dominant portion of its mark is *461 compared to the dominant portion of Defendant's name, the two are identical. Blumenfeld Dev. Corp. v. Carnival Cruise Lines, Inc., 669 F.Supp. 1297, 1320 (E.D.Pa.1987).
Defendant offers evidence demonstrating the different styles of the logos used by each party. This evidence, however, does not have a place here, where Plaintiff's mark is for block lettering of the words "First Keystone Federal," not for a logo. Defendant does not offer any evidence to controvert Plaintiff's evidence as to the similarity of the block lettering of those words. Therefore, this factor weighs in Plaintiff's favor.

B. Strength
Trademarks are given different levels of protection depending upon whether the mark is strong or weak. An arbitrary, fanciful or suggestive mark receives the most protection and is considered strong. Blumenfeld, 669 F.Supp. at 1317. A descriptive mark is weak, and should be protected only if it has a secondary meaning. Id. at 1318. A mark has secondary meaning if consumers associate a particular product with that particular mark. Id.
Defendant asserts that Plaintiff's mark is weak because it is a geographic description of Pennsylvania, the Keystone State. Moreover, Defendant argues that Plaintiff's mark is weak because it is a mark shared by many other users in Pennsylvania. Miss World (UK) Ltd. v. Mrs. America Pageants, Inc., 856 F.2d 1445, 1449 (9th Cir. 1988); Oreck Corp. v. United States Floor Sys., Inc., 803 F.2d 166, 170 (5th Cir.1986), cert. denied, 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987) (when mark used on number of different goods, it "dilutes the strength of the mark and entitles it to a narrower range of protection"). In support of this argument, Defendant proffers pages from area telephone directories that contain numerous "Keystone" listings.
Plaintiff argues that its mark is presumed strong because the mark is incontestable under 15 U.S.C. § 1065. Therefore, according to Plaintiff, Defendant's arguments as to its geographical descriptiveness are irrelevant, because descriptiveness is not one of the permitted defenses to an incontestable mark under 15 U.S.C. § 1115. Park `N Fly, Inc. v. Dollar Park and Fly, 469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985).
Plaintiff's reliance on its incontestable status and Park `N Fly is misplaced, however. Incontestability only addresses the first three aspects of an infringement analysis, namely, whether a mark is valid, entitled to protection and owned by a plaintiff. It is true that once a mark is incontestable, its validity cannot be attacked on the basis that it is merely descriptive, and therefore, not worthy of trademark protection. Id. at 201, 105 S.Ct. at 665. At this stage of our analysis, however, we are not concerned with the mark's validity, but its strength.
In Plaintiff's favor, though, is the doctrine that a registered trademark is presumed to be distinctive, which is the strongest type of mark. Lois Sportswear, 799 F.2d at 871. This does not mean that a mark's strength cannot be attacked, however. Oreck Corp., 803 F.2d at 171. Incontestability is simply one piece of the overall determination of a mark's strength. Lone Star Steakhouse & Saloon v. Alpha of Va., 43 F.3d 922, 935 (4th Cir.1995); Miss World, 856 F.2d at 1449; Lois Sportswear, 799 F.2d at 871. Plaintiff relies wholly on its incontestability argument to support the strength of its mark. Plaintiff does not, however, present evidence to support its position that its mark is strong nor to controvert Defendant's evidence. Accordingly, evidence as to the mark's weakness weighs in Defendant's favor.

3. Degree of Consumer Care
Defendant argues that the amount of money involved in a mortgage is generally so high that consumers take great care in choosing their mortgagee and educating themselves about the different mortgage companies and their products. Accordingly, Defendant argues, there is little chance of confusion because consumers will know the precise name of the company with which they want to deal. Defendant does not, however, offer any evidence to support this assertion. In turn, Plaintiff neither contradicts Defendant's argument nor offers its own evidence *462 on the matter. For this reason, this factor does not weigh in favor of either party.

4. Actual Confusion
Plaintiff offers evidence to indicate that there has been actual confusion in the past among people telephoning or writing to Plaintiff or Defendant. Among other things, Plaintiff offers a list of Defendant's employees that Plaintiff's receptionist kept to help her redirect Defendant's telephone calls that were mistakenly placed to Plaintiff's offices. Plaintiff also proffers a letter and several self-addressed stamped envelopes that Defendant's employee sent Plaintiff asking Plaintiff to forward all misdirected mail to Defendant.
Plaintiff offers this evidence with the argument that likelihood of confusion can be presumed once actual confusion is shown, and summary judgment can therefore be granted. The cases Plaintiff cites to support this argument do not actually stand for this position, however. Most of the cases simply analyze the facts of their cases and so are unhelpful to support Plaintiff's legal argument. American Home Prods. Corp. v. Barr Labs, Inc., 834 F.2d 368, 370 (3d Cir.1987); Lois Sportswear, 799 F.2d at 876; Trans-america Corp. v. Trans America Abstract Serv., 698 F.Supp. 1067, 1071 (E.D.N.Y.1988). The cases that address the legal ramifications of showing actual confusion consider it to be only a significant, not determinative, factor in finding a likelihood of confusion. Versa Prods. Co. v. Bifold Co., 50 F.3d 189, 205 (3d Cir.1995), petition for cert. filed, May 12, 1995; Lone Star Steakhouse & Saloon, 43 F.3d at 937; Smith Fiberglass Prods., 7 F.3d at 1331.
Defendant does not present any evidence to contradict Plaintiff's evidence, but instead, argues that Plaintiff's evidence does not demonstrate actual confusion. Defendant points out that Plaintiff has not shown evidence that any mortgage buyers have bought a mortgage from one company when they meant to purchase it from another. Furthermore, Defendant argues that isolated examples of confusion in addresses and telephone numbers do not demonstrate confusion in the relevant marketplace. Id.
We find that Plaintiff's evidence is not sufficient to demonstrate actual confusion at the summary judgment stage, although we disagree with Defendant that only pre-sale confusion is relevant to this inquiry. Lois Sportswear, 799 F.2d at 872 (post-sale confusion acceptable proof); Oreck, 803 F.2d at 173 (indicia of actual confusion include misdirected telephone calls and mail). We find a material issue of fact as to what the relevant marketplace is and whether there has been actual confusion within it. Accordingly, this factor weighs in favor of neither party.

5. Alleged Infringer's Intent
Defendant offers evidence that it had no intent to infringe Plaintiff's mark because it chose its name before Plaintiff's mark was registered. It proffers its Articles of Incorporation filed with Pennsylvania's Department of State Corporation Bureau. This document states its name as First Keystone Mortgage, Inc. and was filed on March 4, 1985. Plaintiff's evidence is that it registered its mark on March 12, 1985, but had been using it continuously since 1982. We find a genuine issue of material fact as to whether Defendant had actual notice of Plaintiff's mark before 1985 from Plaintiff's pre-registration use, and therefore, this factor does not weigh in any party's favor.

6. Conclusion
To summarize, we found that the only factor of the infringement analysis that weighed in Plaintiff's favor was similarity of marks. We found that the only factor that weighed in Defendant's favor was the strength factor, and that there were genuine issues of material fact as to the other factors. Because the scales are evenly balanced and because of the numerous issues of material fact that exist, we find that the issue of infringement is not amenable to summary judgment. For this reason, both parties' motions for summary judgment on this ground are denied.
An appropriate Order follows.

ORDER
AND NOW, this 16th day of August, 1995, upon consideration of First Keystone Mortgage, *463 Inc.'s Motion for Summary Judgment (doc. no. 13) and First Keystone Federal Savings Bank's Motion for Partial Summary Judgment (doc. no. 17) and responses thereto, the Motions are hereby DENIED.