**AMERICAN SOCIETY OF PLUMBING ENGINEERS, a California Corporation, Plaintiff–Appellant, Cross–Appellee,**

v.

**TMB PUBLISHING, INCORPORATED, an Illinois Corporation, Defendant–Appellee, Cross–Appellant,**

and

**Tom M. Brown, Jr., Defendant–Appellee.**

**Nos. 02–3632, 02–3756.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 17, 2003.

Decided Aug. 3, 2004.

Wayne B. Giampietro, Stitt, Klein, Daday, Aretos & Giampietro, Arlington Heights, IL, for Plaintiff–Appellant.

Daniel N. Christus, Wallenstein & Wagner, Chicago, IL, for Defendant–Appellee.

Before RIPPLE, MANION, and WILLIAMS, Circuit Judges.

### ORDER

The American Society of Plumbing Engineers ("ASPE") brought this action pursuant to 15 U.S.C. § 1125(a). It claimed that TMB Publishing, Inc. ("TMB"), and its president, Tom Brown, Jr., were using improperly ASPE's trademarks. ASPE sought to enjoin TMB and Mr. Brown from (1) using the ASPE mark with the publication of TMB's magazine; (2) using ASPE's membership list; and (3) doing anything to cause confusion that TMB's magazine was approved by ASPE. TMB filed a counterclaim. It requested a preliminary injunction forbidding ASPE from using the title *Plumbing Engineering and Design* or any confusingly similar mark.

After an evidentiary hearing, the district court denied ASPE's motion for a preliminary injunction, but granted TMB a preliminary injunction that prohibited ASPE from using *Plumbing Engineering and Design* to identify its publication or other products. ASPE appeals the district court's decision. TMB and Mr. Brown also cross-appealed. In their view, the district court should have issued a broader injunction that would have prevented ASPE from using any mark sufficiently similar to TMB's mark as to cause confusion. For the reasons set forth in this order, we vacate the order of the district

court and remand the case for proceedings consistent with this order.

# I

## BACKGROUND

### A. Facts

ASPE is a professional organization for engineers who work in the plumbing field. It disseminates technical data, sponsors activities, facilitates interaction among professionals and provides educational opportunities for the members. ASPE owns a federal registration for *American Society of Plumbing Engineers* and for its logo. For over thirty years, ASPE distributed to its members an official magazine entitled *Plumbing Engineer.* ASPE also hosts biennial conventions that alternate with biennial technical symposia.

TMB Publishing, Inc., is a magazine publisher. It publishes *Plumbing Engineer.* Mr. Brown is the President of TMB. After TMB acquired the magazine, it registered the trademark *"Plumbing Engineer"* and has used this mark for the magazine. Over the past ten years, ASPE and TMB entered into numerous contractual agreements to ensure continual distribution of the *Plumbing Engineer* magazine to the ASPE membership.

In April 2002, however, the ASPE board decided not to renew the TMB contract, which was set to expire in September of that year. TMB then terminated the relationship before the end of the contract period but continued to use the ASPE membership list to communicate with those on the list in an effort to ascertain whether they would be willing to subscribe to its magazine and to notify subscribers of the end of the relationship between ASPE and TMB. When the contractual relationship ceased, TMB removed from the magazine the ASPE logo that had indicated that *Plumbing Engineer* was the official ASPE publication. It also published an editorial that informed the readership that the contractual relationship between the parties had ended.

After exploring the possibility of contracting with another publisher, ASPE decided, in July 2002, to publish its own magazine. ASPE initially chose to name its new magazine *Plumbing Engineering and Design.* TMB, however, objected to the use of that name. ASPE acquiesced and responded that it would no longer use that title. ASPE then chose the name *Plumbing Systems and Design.* TMB voiced no objection to this choice.

### B. District Court Proceedings

Despite amicable dealings up to this point, ASPE decided to pursue legal action against TMB. The court first addressed ASPE's request for an injunction against TMB's use of the ASPE name or logo. The court determined that ASPE had no likelihood of success with respect to its claim that TMB had violated ASPE's trademark rights. The district court found that TMB had removed immediately the ASPE logo from its magazine and likewise had deleted any statements that the magazine was the official publication of ASPE. TMB's only use of the ASPE acronym was to explain to its readers that TMB's magazine was no longer affiliated with ASPE.

The district court next considered TMB's use of ASPE's mailing list. The court concluded that there was no use that constituted a violation of the parties' contract. The court held that the contract only prohibited making the list available to others and, in the present case, the list had not been made available to other parties. Furthermore, noted the court, TMB no longer had access to the mailing list. An injunction was therefore unnecessary with respect to this list.

The court then addressed TMB's request in its counterclaim for an injunction

to prohibit ASPE from "further acts of infringement" on TMB's *Plumbing Engineer* trademark. R.14 at 1. The court granted TMB's request and enjoined ASPE "from using the *Plumbing Engineering and Design* mark for its publications or for any other products." R.18 at 9. The court made very limited findings with respect to this injunction. It noted that ASPE had "agreed to rename its magazine," but the court also found that ASPE still was publishing on its website the proposed name as *"Plumbing Engineering and Design"* and that "ASPE's application to register *Plumbing Engineering and Design,* is still pending before the PTO." *Id.* at 8. The court reasoned that, "[s]ince TMB's mark is registered and is incontestable and therefore presumptively strong, TMB's chance of success on the merits is likewise strong." *Id.* The court concluded that *"Plumbing Engineering and Design"* was likely to cause confusion because the name is deceptively similar to TMB's magazine *Plumbing Engineer.* It noted that the balance of hardships favored TMB because "ASPE has agreed to rename its magazine." *Id.* Accordingly, the district court granted the injunction in favor of TMB. It enjoined ASPE from using the name *Plumbing Engineering and Design* on its magazine or on any other products. It further required that ASPE withdraw its pending trademark application and remove the name from its website.

## II

### DISCUSSION

ASPE submits that the district court issued too broad an injunction. In ASPE's view, the district court failed to consider the relatively weak nature of TMB's mark. There is no basis, contends ASPE, to prohibit it from using *"Plumbing Engineering and Design"* on "other products" that do not compete with TMB's magazine, *Plumbing Engineer.* TMB cross appeals and takes the opposite view. It submits that the injunction is too narrow. In its view, the district court should have enjoined ASPE from using *any* mark that is confusingly similar to *"Plumbing Engineering and Design."*

### A.

In reviewing a district court's grant or denial of a preliminary injunction, we review "the court's findings of fact for clear error, its balancing of factors for an abuse of discretion, and its legal conclusions *de novo." Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.,* 128 F.3d 1111, 1114 (7th Cir.1997); *see also Cooper v. Salazar,* 196 F.3d 809, 814 (7th Cir.1999) (noting the reviewing court gives deference to the district court's weighing and balancing of the equitable factors). In order to obtain a preliminary injunction, the moving party must demonstrate

(1) some likelihood of succeeding on the merits, and (2) that it has "no adequate remedy at law" and will suffer "irreparable harm" if preliminary relief is denied. If the moving party cannot establish either of these prerequisites, the court's inquiry is over and the injunction must be denied. If, however, the moving party clears both thresholds, the court must then consider: (3) the irreparable harm that the non-moving party will suffer if preliminary relief is granted, balanc[ed] against the irreparable harm to the moving party if relief is denied; and (4) the public interest, meaning the consequences of granting or denying the injunction to non-parties.

*Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 11–12 (7th Cir.1992) (citations omitted); *see Lawson Prods., Inc. v. Avnet, Inc.,* 782 F.2d 1429, 1433 (7th Cir. 1986).

In a trademark dispute, in order to demonstrate the first element, a likelihood of

success on the merits, the moving party must establish "that 1) he has a protectable mark, and 2) that a 'likelihood of confusion' exists between the marks or products of the parties." *Meridian Mut. Ins. Co.*, 128 F.3d at 1115. In the case before us, the district court determined that *Plumbing Engineer* was a valid protectable mark. The parties do not dispute this conclusion. They focus instead on whether there is a likelihood of confusion.

Likelihood of confusion is a factual determination, and we will defer to the district court unless we find clear error. *See Platinum Home Mortg. Corp. [v. Platinum Fin. Group, Inc.,* 149 F.3d 722, 726 (7th Cir.1998) ]; *August Storck K.G. v. Nabisco, Inc.,* 59 F.3d 616, 618 (7th Cir.1995). Clear error exists if, based on the whole record, we are left with a firm conviction that the district court has made a mistake. *See Rust Env't & Infrastructure Inc. [v. Teunissen,* 131 F.3d 1210, 1216 (7th Cir.1997) ] (citation omitted).

*Barbecue Marx, Inc. v. 551 Ogden, Inc.,* 235 F.3d 1041, 1044 (7th Cir.2000). When assessing the likelihood of confusion, we consider the following seven factors:

(1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of plaintiff's mark; (6) whether actual confusion exists; and (7) whether the defendant intended to "palm off" his product as that of the plaintiff.

*CAE, Inc. v. Clean Air Eng'g, Inc.,* 267 F.3d 660, 677–78 (7th Cir.2001).[1] "The likelihood of confusion test is an equitable balancing test." *Barbecue Marx,* 235 F.3d at 1044. In determining whether to grant a preliminary injunction, the district court must weigh the evidence pertaining to each factor and balance the seven factors against each other. "[N]o single factor is dispositive and courts may assign varying weights to each of the factors in different cases...." *Id.* (citing *Schwinn Bicycle Co. v. Ross Bicycles, Inc.,* 870 F.2d 1176, 1187 (7th Cir.1989); *Smith Fiberglass Prods., Inc. v. Ameron, Inc.,* 7 F.3d 1327, 1329 (7th Cir.1993)). "A preliminary injunction is a very serious remedy, never to be indulged in except in a case clearly demanding it." *Id.* (internal quotations omitted); *see also* 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:30 (4th ed.2003) (citing both *Barbecue Marx* and *Schwinn Bicycle* ).

**B.**

**1.**

■ In addressing the probability of TMB's success on the merits, the district court addressed whether there was a probability that ASPE would use the mark *"Plumbing Engineering and Design."* The district court was correct in not accepting ASPE's mere representations that it would not use the mark. *See United States v. W.T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953). Although such a representation is a relevant consideration in determining whether injunctive relief is appropriate,[2] ASPE's

---

**1.** *See Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.,* 128 F.3d 1111, 1115 (7th Cir. 1997) (quoting *Smith Fiberglass Prods., Inc. v. Ameron, Inc.,* 7 F.3d 1327, 1329 (7th Cir. 1993)); *Int'l Kennel Club of Chicago v. Mighty Star, Inc.,* 846 F.2d 1079, 1087 (7th Cir.1988); *Helene Curtis Indus., Inc. v. Church & Dwight Co.,* 560 F.2d 1325, 1330 (7th Cir.1977).

**2.** *See United States v. W.T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953) ("[A] profession [not to repeat the contested acts] does not suffice to make a case moot although it is one of the factors to be considered in determining the appropriateness of granting an injunction against the now-dis-

promise alone certainly did not render the case moot. Nevertheless, the "moving party," in this case TMB, "must still satisfy the court that injunctive relief is required" to prevent future harms. *Milwaukee Police Ass'n v. Jones,* 192 F.3d 742, 748 (7th Cir.1999). "'The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.'" *Id.* (quoting *W.T. Grant Co.,* 345 U.S. at 633).[3] The district court believed that this burden had been met. It found that ASPE had an application with the United States Patent and Trademark Office ("PTO") to register the title *"Plumbing Engineering and Design"* and that this application "had not been withdrawn." R.18 at 5. It also noted that, as of the date of the hearing, ASPE still listed the name *Plumbing Engineering and Design* on its website as the name of the proposed magazine. *See id.* at 6.

On the basis of our examination of the briefs and of counsel's statements at oral argument, it is unclear to us whether the parties still dispute the correctness of the district court's decision to issue a preliminary injunction with respect to the use of *Plumbing Engineering and Design* as the title of ASPE's new publication. If the situation has changed appreciably since the district court ruled on the matter, the parties must address those changed circumstances to the district court.

Even if there has not been an appreciable change in circumstances, it appears from our examination of the record that the district court ought to reexamine the record and to revisit the determination that a preliminary injunction is appropriate. As we have noted earlier, the district court supported its grant of a preliminary injunction by noting ASPE's publication on its website and its still pending PTO application. The record reveals, however, circumstances that, if true, would militate against reliance on these factors. The record indicates that the PTO application preceded TMB's request and ASPE's promise to rename the magazine; indeed, the application preceded the termination of their contractual relationship. *See* R.32 at 106–07.[4] It also appears that the website publication of the ASPE Report announcing the name of the new publication as *Plumbing Engineering and Design* was created before ASPE's promise to abandon the contested name. The record demonstrates that this announcement was made in the June/July 2002 issue. *See* R.32 at 25–26; R.40 attached Trial Ex.1. Notably, TMB made its request to ASPE that the title not be used on June 6, 2002. *See* R.9 at 2 (TMB's Motion for a Preliminary Injunction). ASPE responded in a June 14, 2002 letter that noted its intent to comply with TMB's request. *Id.* Although the record is not clear, it appears likely that the June/July issue was published before the June 14 letter agreeing to change the name from the contested *Plumbing Engineering and Design.* ASPE submits, and TMB does not dispute on appeal, that ASPE maintains copies of all its past newsletters on its website. It appears that ASPE simply did not delete from its website those documents that announced the future name of the magazine as *Plumbing Engineering and Design. See*

continued acts."); *Milwaukee Police Ass'n v. Jones,* 192 F.3d 742, 748 (7th Cir.1999).

**3.** *See Wilk v. American Med. Ass'n,* 895 F.2d 352, 366–67 (7th Cir.1990) (distinguishing between the heavy burden of mootness by the defendant and the burden the moving party has to warrant an injunction).

**4.** ASPE Executive Director Mark Wolfson provided this information in his testimony. There is no indication in the record that the district court declined to find this testimony credible.

ASPE's Br. at 6; *see also* TMB's Br. at 4 (noting that the facts were generally not in dispute). Although the record does not reveal such an examination, it may well be that the district court considered these matters and determined nevertheless that circumstances required the issuance of the preliminary injunction. If such consideration was undertaken, greater elaboration is necessary to facilitate meaningful appellate review.

### 2.

We also are concerned about the district court's conclusory finding that the title *Plumbing Engineering and Design* presents a likelihood of confusion. The court concluded that the *Plumbing Engineering and Design* "name of ASPE's proposed magazine, under the circumstances here present, would likely cause confusion in the eyes of the public between the two magazines." R.18 at 6. As we have noted earlier, the district court's determination of likelihood of confusion is a factual determination, and, therefore, it is entitled to great deference from us. However, our cases make clear that, in arriving at this conclusion, "the district court must weigh the evidence pertaining to each likelihood of confusion factor and balance the seven factors against each other." *Barbecue Marx*, 235 F.3d at 1044. We cannot discern from its decision that the district court engaged in that process. Rather, in summary fashion, the court concluded that the *Plumbing Engineering and Design* mark was "deceptively similar" to TMB's registered and incontestable mark, *Plumbing Engineer*. R.18 at 8. The court expressed the view that, because "TMB's mark is registered and is incontestable and therefore presumptively strong, TMB's

chance of success on the merits is likewise strong." *Id.*

### a.

With respect to the similarity of the marks in appearance and suggestion, the district court simply made the conclusory statement that the names are "deceptively similar." *Id.* ¶ 4. In some circumstances an independent assessment by us would be appropriate.[5] Because the district court will have to assess this factor with the other competing concerns, we believe that an initial assessment by the district court is indicated here.

Our case law already establishes the considerations that the court ought to take into account in making such a determination. In comparing two marks for their similarity, the court should not "focus on minor stylistic differences" when the public does not encounter the two together. *Meridian Mut. Ins. Co.*, 128 F.3d at 1115. Nor should it compare the two side by side if consumers ordinarily do not make such comparisons. *See id.; Union Carbide Corp. v. Ever–Ready, Inc.*, 531 F.2d 366, 382 (7th Cir.1976). Instead, the court should make a comparison under conditions that are likely to appear in the market. Rather than parsing words to detect theoretical distinctions, it ought to employ a common sense approach and view the mark as a consumer might. *See Meridian Mut. Ins. Co.*, 128 F.3d at 1115; *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1088 (7th Cir. 1988). In making such an assessment, a court may deem it appropriate to assess the similarity of the sound, sight or meaning of the word or words. *Henri's Food Prods. Co. v. Kraft, Inc.*, 717 F.2d 352, 356 (7th Cir.1983). Finally, if a particular

---

5. *See Henri's Food Prods. Co. v. Kraft, Inc.*, 717 F.2d 352, 354 (7th Cir.1983) ("[T]o the extent the [likelihood of confusion] determination is predicated on the similarity of the marks themselves, this Court is in as good a position as the trial judge to determine likelihood of confusion.").

word or feature of the mark is the most salient part of the mark, special focus can be afforded to that part of the mark. *See Int'l Kennel Club,* 846 F.2d at 1087–88 (quoting *Henri's Food Prods. Co.,* 717 F.2d at 356).

### b.

■ The district court also gave some consideration to the strength of the mark. We cannot accept, however, the approach undertaken by the district court in this respect. The district court concluded that "[s]ince TMB's mark is registered and is incontestable and therefore presumptively strong, TMB's chance of success on the merits is likewise strong." R.18 at 8.

The incontestability of a mark and the likelihood of confusion are two separate inquiries. A mark becomes incontestable when a federally registered mark has been in continuous use for five consecutive years and when there has been compliance with other statutory formalities. Generic names cannot achieve this designation. Once the requirements of 15 U.S.C. § 1065 are met and the mark is deemed incontestable, the lack of distinctiveness of such a mark cannot be used to argue the mark is invalid. *See Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.,* 469 U.S. 189, 196, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985); 2 *McCarthy on Trademarks and Unfair Competition, supra,* § 11:44. Once a registered mark has achieved an incontestable designation, the mark is considered conclusively valid. *See Park 'N Fly,* 469 U.S. at 196; *Munters,* 909 F.2d at 252 (noting that incontestable marks cannot be challenged based on a charge that they are descriptive). Conversely, before a mark becomes incontestable, the mark can be challenged as merely descriptive and thus an invalid, unprotectable trademark.[6]

There is no dispute that TMB holds a valid and protectable mark, but the strength of that mark is another inquiry. *See Munters,* 909 F.2d at 252 (explaining that the strength of the mark could be used in determining the likelihood of confusion even though the court found that the mark was incontestable); *M–F–G Corp. v. EMRA Corp.,* 626 F.Supp. 699, 703 (N.D.Ill.1985), *aff'd,* 817 F.2d 410 (7th Cir.1987); 2 *McCarthy on Trademarks and Unfair Competition, supra,* § 11:84 (noting that the validity of an incontestable and registered mark cannot be challenged, but this status "does not prevent defendant from questioning the *strength,* and hence the scope of protection, of the mark as to different goods in determining the issue of likely confusion"). The status of a mark as incontestable does not *ipso facto* establish the relative strength of a mark in a likelihood of confusion analysis. 5 *McCarthy on Trademarks and Unfair Competition, supra,* § 32:155 ("Incontestable status does not make a weak mark strong." (quoting *Oreck Corp. v. U.S. Floor Sys., Inc.,* 803 F.2d 166 (5th Cir.1986))).[7] Nor is the term "incontestable" a synonym for a strong mark. The fact that the mark may be incontestable does not indicate the mark is relatively strong but only that it is not generic for purposes of 15 U.S.C. § 1065. *See Munters,* 909 F.2d at 252.

While the incontestable status is often a bright line designation, the strength of a mark is not so clearly defined as either one or the other but exists as a spectrum with

---

6. Because generic terms are not afforded trademark protection, "[m]ost often an analysis of the strength of the complainant's mark is undertaken to determine whether an unregistered trademark is protectable." *Munters Corp. v. Matsui America, Inc.,* 909 F.2d 250, 252 (7th Cir.1990).

7. *But cf. Dieter v. B & H Indus. of Southwest Florida, Inc.,* 880 F.2d 322, 329 (11th Cir. 1989) ("Because [plaintiff's] mark is incontestable, then it is presumed to be at least descriptive with secondary meaning, and therefore a relatively strong mark.").

all the attendant gradations. As one commentator has put it, it would be "absurd to separate marks into two neat categories of 'strong' marks and 'weak' marks. Strength is relative." 2 *McCarthy on Trademarks and Unfair Competition, supra*, § 11:74. A mark is not "strong" just because it is not descriptive or generic. Incontestable status merely requires a non-generic mark; strength analysis encompasses a different inquiry employing additional considerations.

In contrast, the strength of a mark is a product of the mark's distinctiveness and/or of its capacity to identify goods from a particular source.[8] The assessment of a mark's strength comprises such factors as: (1) its type;[9] (2) whether it has been subject to wide and extensive advertisement or use by the holder;[10] or (3) a combination of both. *See Telemed Corp. v. Tel–Med, Inc.*, 588 F.2d 213, 219 (7th Cir. 1978); *M–F–G Corp.*, 626 F.Supp. at 701–03; *see also CAE, Inc.*, 267 F.3d at 684–85 (discussing and applying the abovementioned factors). Also of value in this analysis is the extent of third-party use and registration of the term or similar terms. *See McGraw–Edison Co. v. Walt Disney Prods.*, 787 F.2d 1163, 1171 (7th Cir.1986); *see also CAE*, 267 F.3d at 685. The more use and promotion of similar marks by third parties, the weaker the mark and less protection afforded. *See McGraw–Edison*, 787 F.2d at 1171.

ASPE could not attack TMB's *Plumbing Engineer* mark by arguing that it is descriptive and therefore not a valid protectable mark. The TMB *Plumbing Engineer* mark is incontestable and valid. Here, however, ASPE wants to use a mark that TMB claims is too similar to its *Plumbing Engineer* mark. When determining the likelihood of confusion that results from the use of an allegedly similar mark, a court should consider the strength of the mark to determine the zone of protection the allegedly infringed mark warrants. The stronger a mark, the more one is likely to associate similar marks and products with it. A strong mark therefore receives broader protection. *See CAE*, 267 F.3d at 684; 2 *McCarthy on Trademarks and Unfair Competition, supra*, §§ 11:73, 11:75. Describing a mark as "weak" or stating that the mark is entitled to "limited protection" because it is weak are both

> other ways of saying, . . . that confusion is unlikely because the marks are of such non-arbitrary nature or so widely used that the public easily distinguishes slight differences in the marks under consideration as well as differences in the goods to which they are applied, even though the goods of the parties may be considered "related."

*Telemed Corp.*, 588 F.2d at 219 (quoting *King Candy Co. v. Eunice King's Kitchen, Inc.*, 496 F.2d 1400, 1401 (C.C.P.A.1974)). "Where a party uses a weak mark, his

---

**8.** *See Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 464 (7th Cir.2000); *Telemed Corp. v. Tel–Med, Inc.*, 588 F.2d 213, 219 (7th Cir.1978); 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 11:75 (4th ed.2003).

**9.** Marks are often categorized into five levels: generic, descriptive, suggestive, arbitrary and fanciful. *See CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 684 (7th Cir.2001). The categories indicate a progressive degree of distinctiveness and therefore a concomitant increase in strength. When a mark is not

considered generic for 15 U.S.C. § 1065 purposes, it cannot be considered to be at the lowest end of the distinctiveness spectrum. However, that designation does little to assess the mark's overall strength in the likelihood of confusion analysis.

**10.** We note that there is at least some evidence in the record on this point. *See* R.32 at 172, 177 (testimony indicating thirty years of publication under the *Plumbing Engineer* name which was an estimated 3.5 million publications).

competitors may come closer to his mark than would be the case with a strong mark without violating his rights." 2 *McCarthy on Trademarks and Unfair Competition, supra,* § 11:73 (citation omitted).

In sum, the *strength* of a mark does not rely on the mere incontestability of the registered mark but must reflect all of these factors. Here, the district court evaluated the strength of the mark from a perspective not grounded in our case law when it said that "[s]ince TMB's mark is incontestable and therefore presumptively strong, TMB's chance of success on the merits is likewise strong." R.18 at 8. A remand is warranted for a proper determination of this factor consistent with the guidance above.

The district court's statement that the mark was incontestable and therefore strong seems, in context, to suggest as well that the court relied only on the incontestable status to find the success on the merits was strong. We especially are concerned in this case because the district court's opinion failed to address or comment on the five remaining factors indicated in *CAE, Inc. v. Clean Air Eng'g, Inc.,* 267 F.3d 660 (7th Cir.2001).[11] It is to those remaining factors that we briefly turn to provide some guidance on remand.

#### c.

In assessing the similarity of the products, our case law requires that the district court consider "whether the public is likely to attribute the products and services to a single source." *CAE,* 267 F.3d at 679. Similarity in format and material is relevant in assessing whether consumers reasonably would believe that the publications came from the same source. *See id.; Int'l Kennel Club,* 846 F.2d at 1089.

With regard to the area and manner of concurrent use, the court should assess "whether there is a relationship in use, promotion, distribution, or sales between the goods or services of the parties." *CAE,* 267 F.3d at 681 (quoting *Forum Corp. v. Forum Ltd.,* 903 F.2d 434, 442 (7th Cir.1990)). We think that this factor is especially important because the publications target the same, and a rather limited, audience. Here, the court noted that both publications were magazines directed toward the same readership. Without more extensive exploration of this factor, we cannot determine how the district court weighed this consideration in its analysis. The court made no findings as to whether the content or format of each would be different or whether the magazines served different functions.[12]

The knowledge and care consumers exercise in purchasing the magazine—either through the subscription or a membership in an organization such as ASPE—"are significant factors in determining whether consumers are likely to be confused." *Rust Env't & Infrastructure, Inc. v. Teunissen,* 131 F.3d 1210, 1217 (7th Cir.1997) (upholding a district court's finding that

**11.** We acknowledge that, in at least one instance, we undertook an independent assessment when the district court failed to explain "how the evidence was weighed or the factors were balanced." *Barbecue Marx, Inc. v. 551 Ogden, Inc.,* 235 F.3d 1041, 1044 (7th Cir. 2000). In *Barbecue Marx,* however, the district court had provided factual findings on all but one of the seven likelihood of confusion factors. The court also indicated that, due to the lack of explanation on the district court's weighing of factors, appellate review under a clear error standard was "significantly more difficult." *Id.* Given the state of the record, an independent assessment of the remaining factors is not a practical possibility.

**12.** We acknowledge that it may prove to be rather difficult for the district court to perform this analysis because one of the publications is brand new. It well may be possible, however, for the court to assess this factor on the basis of evidence of the planned editorial approach of each magazine.

the relevant market of consumers was "composed of sophisticated buyers of services in a highly specialized technical field" and therefore likely would not be confused).

Additionally, any evidence of actual confusion is relevant. TMB concedes that "[t]here have been no accounts of actual confusion" but insist that such a showing is not required at the preliminary injunction stage. TMB's Br. at 10. Although TMB is correct that actual confusion is not *required* at this stage, *see Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 464 (7th Cir.2000), the absence of any evidence on this issue certainly does not weigh in favor of a likelihood of confusion, *see Barbecue Marx, Inc. v. 551 Ogden, Inc.,* 235 F.3d 1041, 1045–46 (7th Cir.2000). The fact that ASPE had not published a magazine with the contested title at the time of the hearing does not excuse TMB's burden on this element. *See Barbecue Marx,* 235 F.3d at 1046. "Actual confusion can be shown by either direct evidence or by survey evidence." *Rust Env't,* 131 F.3d at 1218; *see Barbecue Marx,* 235 F.3d at 1046 (holding that even though the contested name had not yet appeared in the market this impediment did not excuse the moving party from the requirement that it provide some evidence, and explaining that a survey asking a hypothetical question or testimony from a marketing expert could have satisfied this burden). The district court understandably made no factual findings regarding actual confusion in light of the parties' statements. The factor must, of course, be taken into consideration in determining the appropriateness of injunctive relief.

Finally, the district court should consider whether ASPE was attempting to "palm off" its products as that of TMB. Evidence of intent to palm off one's products as those of another can be one of the most important factors in the likelihood of confusion determination. *See Eli Lilly,* 233 F.3d at 465. Intent in this situation "refers to the intent to confuse customers, not merely the intent to use a mark that is already in use somewhere else." *Meridian Mut. Ins. Co.,* 128 F.3d at 1120. Mere similarity between two names does not indicate intent. *See Barbecue Marx,* 235 F.3d at 1046.

### C.

Even if the district court were to find that the issue of injunctive relief with respect to the magazine is now moot, the court must confront explicitly the application of the same factors as they relate to the use of *Plumbing Engineering and Design* on "other products." The district court did not give any reasons why the use of the mark on other products would be confusing. Indeed, the identity of these "other" products is unclear on the present record.[13] Not only do we not have any information about the "other products," we do not even know in what context the "products" will be used. We cannot review the district court's finding of a likelihood of confusion without specific identification of the products or the manner in which they will be used or marketed.

### D.

TMB cross appeals and asks that we direct the district court to impose a broader preliminary injunction that would include ASPE's use of *Plumbing Engineer or* "any confusingly similar mark, on any goods or services." TMB's Br. at 16.

---

13. There is some discussion in the record of ASPE using *Plumbing Engineering and Design* to advertise for trade shows but the district court enjoined the use of the *Plumbing Engi-* *neering and Design* name on "other products." The injunction is not confined to trade shows but indicates merely "other products."

TMB's specific concern seems to be that ASPE will use the term *Plumbing Engineering and Design* in connection with the trade shows that it sponsors. TMB attends these trade shows as an exhibitor. ASPE advertises these trade shows in TMB's *Plumbing Engineer*. TMB contends that such an expanded injunction is necessary to prevent confusion between the two entities and their products. It notes that the magazine and the trade show are directed toward the same consumers.

Resolution of this matter relies upon much of the previous discussion. Absent the requisite findings, we must remand this issue to the district court.

### Conclusion

For the reasons set forth in this order, the judgment of the district court is vacated and the case is remanded for proceedings consistent with this order. ASPE may recover its costs in this court.

IT IS SO ORDERED